THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GERARDO GARCIA, Defendant-Appellant.

First District (3rd Division)   No. 80—2073

Opinion filed September 8, 1982.

Sam Adam, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Casimir J. Bartnik, and Dean P. Karlos, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant, Gerardo Garcia, was tried by a jury and found guilty of possession and possession with intent to deliver cocaine, a controlled substance (Ill. Rev. Stat. 1979, ch. 56½, pars. 1401(a)(2), 1402(a)(2)). He contends that the judgment should be reversed and the case remanded because he was denied an evidentiary hearing on his motion to suppress and because of prosecutorial errors during the trial. We reverse and remand for an evidentiary hearing on defendant's motion and for a new trial.

On October 11, 1979, while searching an apartment pursuant to a search warrant, Chicago police discovered and seized a quantity of co-

caine. The search warrant had been issued as a result of the affidavit of one of the police officers. The affidavit included hearsay averments of an undisclosed informer.

Prior to trial, defendant moved to suppress the evidence obtained from the search on the basis that the warrant was illegally obtained. Defendant claimed that the police officer's affidavit was knowingly and intentionally false. Defendant did not limit his challenge merely to specific allegations in the police officer's affidavit, but rather, defendant challenged the integrity of the oath of the police officer as to the entire affidavit. Defendant supported his motion with his own affidavit and requested an evidentiary hearing. He also requested that the police officer who filed the affidavit be called as the first witness and that the undisclosed informer then be produced and called to testify.

The State objected to an evidentiary hearing because "only the four corners of the search warrant are all that can be examined once the search warrant is executed ***." The court sustained the State's objection and denied defendant an evidentiary hearing. The objects seized in the search were later introduced in evidence during the trial, and defendant was convicted.

This case involves the constitutional right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, and the concomitant constitutional guarantee that no search warrant shall issue but upon probable cause, supported by oath or affirmation. (U.S. Const., amend. IV.) In order to ensure the protection of this constitutional right and guarantee, subsequent to the *ex parte* issuance of a search warrant, a defendant may be entitled to an evidentiary hearing to determine whether the government violated his right and guarantee when it issued the warrant. (*Franks v. Delaware* (1978), 438 U.S. 154, 155-56, 57 L. Ed. 2d 667, 672, 98 S. Ct. 2674, 2676.) In *Franks*, the court held that where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the fourth amendment requires that an evidentiary hearing be held at the defendant's request. 438 U.S. 154, 155-56, 57 L. Ed. 2d 667, 672, 98 S. Ct. 2674, 2676.

In the present case, the State contends that the affidavit which defendant filed in support of his request for an evidentiary hearing did not constitute a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the

truth, was included by the affiant in the warrant affidavit. We disagree.

The police officer's affidavit stated that an anonymous, reliable informer told him that on October 10, 1979, the anonymous informer and an anonymous friend were in defendant's apartment at 5874 N. Ridge, Chicago, Illinois, and that defendant sold cocaine to the anonymous friend in the presence of the anonymous informer. The affidavit also stated that an independent investigation revealed that the premises located at the stated address were accurately described by the anonymous informer, that a 1977 white Cadillac bearing Florida license GBH-166 was parked in front of the apartment and that a computer check revealed the vehicle was owned by defendant.[1]

Defendant's affidavit specifically denied each allegation in the police officer's affidavit. Defendant's affidavit also stated that defendant's white Cadillac could not have been parked in front of the apartment on the day and at the time stated in the police officer's affidavit because defendant was driving in the automobile from his home in Miami, Florida, to Chicago, Illinois, on that day and at that time. Defendant's affidavit was sufficiently detailed to subject him to a charge of perjury, which is a felony. Ill. Rev. Stat. 1979, ch. 38, par. 32—2.

■ Although *Franks* requires a substantial showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit before a defendant is entitled to an evidentiary hearing, *Franks* also holds that the showing need only be preliminary. Thus, a defendant is not required to prove his charge by a preponderance of the evidence before he is entitled to an evidentiary hearing under *Franks*. It is only at the hearing itself that a defendant, aided by testimony and the crucible of cross-examination, must prove his charge by a preponderance of the evidence. See *Franks v. Delaware* (1978), 438 U.S. 154, 156, 57 L. Ed. 2d 667, 672, 98 S. Ct. 2674, 2676; see generally *United States v. Chesher* (9th Cir. 1982), 678 F.2d 1353, 1362, where the court held that "clear proof" is not required to be shown before a defendant is entitled to an evidentiary hearing.

In the present case, we do not believe defendant's affidavit should be considered unworthy of belief merely because he has an interest in

---

[1]Although the affidavit did not specifically state who conducted the independent investigation, we assume from the affidavit as presented that it was the affiant himself who did and saw the things stated. See *United States v. Chesher* (9th Cir. 1982), 678 F.2d 1353, 1359.

the case, anymore so than the police officer's affidavit should be considered unworthy of belief because he has an interest in the case by being a representative of government and associated with the prosecution. Moreover, we must bear in mind that much of the information in the police officer's affidavit was hearsay derived from an anonymous source. It would be exceedingly difficult and in many cases impossible for a defendant in such circumstances to prove in advance of a hearing that the allegations in his affidavit are true and the allegations in the police officer's affidavit are not true. (See *People v. Cook* (1978), 22 Cal. 3d 67, 92, 583 P.2d 130, 144, 148 Cal. Rptr. 605, 619.) We must also remember that it was actually the *abuse* of search warrants which led to adoption of the fourth amendment. (*Sgro v. United States* (1932), 287 U.S. 206, 210, 77 L. Ed. 260, 262, 53 S. Ct. 138, 140.) Also, it is not unknown for the arresting officer to misrepresent his connection with the informer, his knowledge of the informer's reliability, or the information allegedly obtained from the informer. *McCray v. Illinois* (1967), 386 U.S. 300, 316 n.2, 18 L. Ed. 2d 62, 74 n.2, 87 S. Ct. 1056, 1065 n.2 (Douglas, J., dissenting); see *People v. Mitchell* (1970), 45 Ill. 2d 148, 157-58, 258 N.E.2d 345, 350 (Schaefer, J., dissenting), where reference was made to the wholesale use of " 'boiler-plate' " affidavits to obtain search warrants;[2] see also *People v. Cook* (1978), 22 Cal. 3d 67, 85-86 n.7, 583 P.2d 130, 140 n.7, 148 Cal. Rptr. 605, 615 n.7.

Accordingly, if we were to require a defendant to do more than defendant did here to make a substantial preliminary showing under

---

[2]We note with special interest the dissent of Justice Schaefer in *Mitchell* as well as the dissent of Justice Ward in *People v. Bak* (1970), 45 Ill. 2d 140, 258 N.E.2d 341. *Mitchell* and *Bak* were decided on the same day. In both cases, the question presented was "whether the person against whom or against whose property a search warrant has been directed may dispute the matters declared under oath which led to the finding of probable cause and the issuance of a search warrant by the judicial officer." (45 Ill. 2d 140, 141, 258 N.E.2d 341.) The majority in both cases held that the defendant was not entitled to an evidentiary hearing to dispute the averments made in the warrant affidavit. In his dissent in *Bak*, Justice Ward stated:

> "It seems to me that the integrity of the search warrant procedure requires that one who complains that false evidence has been introduced to his detriment should be given an opportunity to show this. To me, a refusal, though well intentioned, to permit such a showing diminishes the judicial process.
>
> The position taken by the majority avoids admittedly troublesome problems, but another consequence is that we sacrifice something of first importance."

45 Ill. 2d 140, 148, 258 N.E.2d 341, 345. Of course, what was stated in the dissents of Justice Schaefer and Justice Ward, in effect, became the law of the land when the United States Supreme Court decided *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674.

*Franks*, we could be placing an insurmountable burden on a defendant, which would, in effect, deny him a substantial right and guarantee of the fourth amendment. In addition, we would be presuming that a police officer was telling the truth in his affidavit and that a defendant was not telling the truth in his affidavit. But we would have no basis for making that presumption, and neither would the trial court judge.

■ We therefore conclude that defendant's affidavit constituted a substantial preliminary showing that he was entitled to an evidentiary hearing on his motion to suppress.

The State next contends that defendant was not entitled to an evidentiary hearing because he "failed to show that probable cause was not established, even if the statements [in the police officer's affidavit] were false." On this point, the State presumes that the issue involved here only concerns the truthfulness of the allegations in the police officer's affidavit relating to the presence of defendant's automobile. In its brief, the State says that "even if the part of [the police officer's] affidavit pertaining to defendant's car were excluded, the remaining contents of the affidavit would have established probable cause for the issuance of the search warrant." The remaining contents of the affidavit are the alleged hearsay averments of the unidentified informer.

Defendant's motion stated that none of the allegations in the police officer's affidavit were true, that the police officer knew they were not true, that the police officer proceeded before the judge to obtain the search warrant although he knew the allegations in his affidavit were not true and that he did so with a reckless disregard for the truth. In his affidavit, defendant denied each specific factual allegation in the police officer's affidavit. Under the circumstances, it is clear that defendant was not challenging isolated allegations in the police officer's affidavit, but rather, defendant was challenging, under oath, the integrity of the oath of the police officer as to the entire affidavit. However, the State argues that the oath of the police officer as to the affidavit itself is not an issue because even if the police officer lied as to the "facts" based on his personal knowledge, the alleged hearsay averments of the unidentified informer must be taken as true. We cannot accept the State's argument.

■ We conclude that a defendant may challenge, under oath, and thereby place in issue, the integrity of a police officer's oath as to the entire warrant affidavit. If a defendant can show that the police officer's oath was not truthful and not made in good faith, then the affidavit must be voided. This conclusion stems from the language of the fourth amendment which mandates that no warrant shall issue but

upon probable cause supported by oath or affirmation. Obviously, this mandate takes the affiant's good faith and truthfulness as its premise. Thus, when a police officer shows probable cause for the issuance of a search warrant, the showing must be truthful and in good faith. This, of course, does not mean that any negligent or honest misstatements would prove fatal or that every fact stated in the affidavit must be factually true. However, it certainly must mean that every fact stated in the affidavit is included in good faith and is believed to be true by the police officer. (See *Franks v. Delaware* (1978), 438 U.S. 154, 164-65, 57 L. Ed. 2d 667, 678, 98 S. Ct. 2674, 2681.) If it were otherwise, the oath or affirmation mandate of the fourth amendment would be a sham, for warrants would be issued under "oaths" that are not worthy of belief.

Moreover, warrants are issued under the imprimatur of the courts. It would make a mockery of a judge's role if, in an *ex parte* proceeding, police officers could freely employ false allegations in an affidavit to secure a warrant. Additionally, the imperative of judicial integrity would be seriously harmed if warrants are allowed to be issued upon affidavits that contain "facts" which the affiant knows are not true. Plainly, our judicial system cannot, and should not, tolerate, acquiesce in, or be an accessory to such practices.

Our conclusion is consistent with the principle that an affidavit for a search warrant should not be deemed insufficient because it is based on hearsay averments of an unidentified informer *so long as there is a substantial basis for crediting such hearsay. (United States v. Ventresca* (1965), 380 U.S. 102, 108, 13 L. Ed. 2d 684, 688, 85 S. Ct. 741, 745; *Jones v. United States* (1960), 362 U.S. 257, 269, 272, 4 L. Ed. 2d 697, 707, 708, 80 S. Ct. 725, 735, 736; see *Aguilar v. Texas* (1964), 378 U.S. 108, 114-15, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509, 1514.) However, if the oath of the police officer as to the affidavit is impugned and shown to have been untruthful and not made in good faith, there would not be a substantial basis for crediting the hearsay averments in the affidavit. Moreover, if the oath upon which the affidavit is based is shown to have been untruthful and not made in good faith, it would follow that the affidavit itself would have to be voided. (*People v. Farnsworth* (1981), 95 Ill. App. 3d 105, 107, 419 N.E.2d 693, 694-95.) Also, there would not be probable cause "supported by oath" which is required for the issuance of the warrant. *People v. Cook* (1978), 22 Cal. 3d 67, 85-86, 583 P.2d 130, 140-41, 148 Cal. Rptr. 605, 615-16; but see *Franks.*

■ ■ We recognize that even when a warrant affidavit is shown to contain blatant lies, *Franks* requires only that the lies be excised

and the remainder of the affidavit be tested for probable cause. However, we believe the validity and effect of an intentionally false affidavit for a warrant is to be determined by Illinois law in an Illinois case, provided Illinois law does not give its citizens less protection than *Franks* and does not contravene rights and guarantees of the United States Constitution. (See *People v. Cook* (1978), 22 Cal. 3d 67, 89, 583 P.2d 130, 142, 148 Cal. Rptr. 605, 617.)[3] The Illinois Supreme Court has not yet addressed the question of whether a search warrant issued upon an affidavit containing deliberate lies by the affiant should be upheld. We conclude that to hold such an affidavit is valid, even if the intentionally false allegations are not necessary for a finding of probable cause, would make the oath of an affidavit meaningless. For the reasons stated herein, we believe that Illinois law would not allow an affidavit which contains lies by the affiant to be used as a basis for issuing a warrant.[4]

We therefore hold that the State's contention that defendant was not entitled to an evidentiary hearing even if the statements in the police officer's affidavit were intentionally false is without merit.

The State next contends that we should consider evidence presented at trial to determine whether the warrant was legally issued. The State relies upon *People v. Sakalas* (1980), 85 Ill. App. 3d 59, 65, 405 N.E.2d 1121, 1127, which states that "in considering a ruling

---

[3]*Cook* was decided after *Franks*. In *Cook*, the court held that where an affidavit for a search warrant contains intentionally false allegations, a court cannot excise the false allegations and presume the remainder of the affidavit to be true. Rather, the court held, the warrant must be quashed and the products of the search excluded, regardless of the effects of the intentionally false statements on probable cause. (22 Cal. 3d 67, 87, 583 P.2d 130, 141, 148 Cal. Rptr. 605, 616.) With respect to *Franks* on this point, the court in *Cook* held: "But *** [*Franks*] would afford our citizens less protection than is guaranteed to them under California law ***. *** In these circumstances it is settled doctrine *** that all challenges to the veracity of a search warrant affidavit in our courts are to be governed by [California law]." 22 Cal. 3d 67, 88, 583 P.2d 130, 142, 148 Cal. Rptr. 605, 617.

[4]*People v. Farnsworth* (1981), 95 Ill. App. 3d 105, 419 N.E.2d 693, supports this conclusion. There, it was shown that the police officer deliberately swore falsely in the affidavit he executed in support of the search warrant. In determining that the trial court properly quashed the search warrant and suppressed the evidence seized, the court stated:

> "*Franks v. Delaware* *** authorizes inquiry into questions of false and misleading search warrant affidavits where false statements are not apparent from a mere reading of the document itself. *United States v. Carmichael* [(7th Cir. 1973), 489 F.2d 983] is authority for the proposition that deliberate perjury by a government affiant is grounds for striking not only the false statements but the warrant itself and any evidence produced from a search based thereon. This is just such a case." 95 Ill. App. 3d 105, 107, 419 N.E.2d 693, 694-95.

upon a motion to suppress, a reviewing court may consider evidence during trial after the conclusion of the suppression hearing." We do not find *Sakalas* applicable here.

█ *Sakalas* did not involve the validity of the issuance of a warrant and, in fact, no warrant was issued in *Sakalas* or in the cases cited in *Sakalas*. It is elementary that in passing on the validity of a warrant, a reviewing court may consider only information brought to the attention of the magistrate or judge when the warrant was issued. (*Aguilar v. Texas* (1964), 378 U.S. 108, 109 n.1, 12 L. Ed. 2d 723, 725 n.1, 84 S. Ct. 1509, 1511 n.1; *Spinelli v. United States* (1969), 393 U.S. 410, 413 n.3, 21 L. Ed. 2d 637, 642 n.3, 89 S. Ct. 584, 587 n.3.) Proof of probable cause for the issuance of a warrant "must speak as of the time of the issue of that warrant." (*Sgro v. United States* (1932), 287 U.S. 206, 211, 77 L. Ed. 260, 263, 53 S. Ct. 138, 140.) If it were otherwise, the obvious purpose and clear intention of the fourth amendment would be nullified, and an important right and guarantee of the people would be rendered meaningless. *Aguilar* makes this point very clear:

> "The record does not reveal, nor is it claimed, that any other information was brought to the attention of the Justice of the Peace. It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention. *Giordenello v. United States*, 357 U.S. 480, 486; 79 C.J.S. 872 (collecting cases). In *Giordenello*, the Government pointed out that the officer who obtained the warrant " 'had kept petitioner under surveillance for about one month prior to the arrest.' " The Court of course ignored this evidence, since it had not been brought to the magistrate's attention. The fact that the police may have kept petitioner's house under surveillance is thus completely irrelevant in this case, for, in applying for the warrant, the police did not mention any surveillance." (*Aguilar v. Texas* (1964), 378 U.S. 108, 109 n.1, 12 L. Ed. 2d 723, 725 n.1, 84 S. Ct. 1509, 1511 n.1.)

We therefore conclude that the State's contention that we should consider evidence presented at trial to determine whether the warrant was legally issued is without merit.

█ Accordingly, we hold that the trial court erred in denying defendant an evidentiary hearing on his motion to suppress and the case must therefore be remanded.[5] At the evidentiary hearing,

---

[5]We reach our conclusion through the perspective that the rights and guarantees

defendant may call the police officer who filed the warrant affidavit to testify. If under all the circumstances the judge doubts the credibility of the police officer, the judge may[6] require that the informer be identified or even produced (see *McCray v. Illinois* (1967), 386 U.S. 300, 307-08, 18 L. Ed. 2d 62, 69, 87 S. Ct. 1056, 1060-61), and if the State fails to comply, the judge may grant the motion to suppress (see *Roviaro v. United States* (1957), 353 U.S. 53, 61, 1 L. Ed. 2d 639, 645, 77 S. Ct. 623, 628).[7] Also, in the event defendant sustains his burden of proof by a preponderance of the evidence, the warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit filed with the warrant complaint. (*Franks v. Delaware* (1978), 438 U.S.

---

of the fourth amendment belong in the category of indispensable freedoms (*Spinelli v. United States* (1969), 393 U.S. 410, 435, 21 L. Ed. 2d 637, 655, 89 S. Ct. 584, 598 (Fortas, J., dissenting)) and that therefore the protection the amendment affords must be liberally construed in favor of the individual. (*Sgro v. United States* (1932), 287 U.S. 206, 210, 77 L. Ed. 260, 262, 53 S. Ct. 138, 140.) In this regard, though the police are generally honest and their aims worthy, history shows that they are not appropriate guardians of the privacy which the fourth amendment protects. *Jones v. United States* (1960), 362 U.S. 257, 273, 4 L. Ed. 2d 697, 709, 80 S. Ct. 725, 737 (opinion of Douglas, J.). See *Spinelli v. United States* (1969), 393 U.S. 410, 436, 21 L. Ed. 2d 637, 655, 89 S. Ct. 584, 599 (Fortas, J., dissenting); *People v. Cook* (1978), 22 Cal. 3d 67, 85-86 n.7, 583 P.2d 130, 140 n.7, 148 Cal. Rptr. 605, 615 n.7; see generally with respect to the history of the fourth amendment, N. Lasson, The History and Development of the Fourth Amendment to the United States Constitution (1937); Sevilla, *The Exclusionary Rule and Police Perjury*, 11 San Diego L. Rev. 839, 869 (1974); Schlichter, *The Outwardly Sufficient Search Warrant Affidavit: What If It's False?* 19 U.C.L.A. L. Rev. 96, 111-12 (1971).

[6]The State is not required to expose an informer's identity routinely, upon a defendant's mere demand, when there is ample evidence in the suppression hearing to show that the informant is reliable and his information credible. (See *Franks v. Delaware* (1978), 438 U.S. 154, 170, 57 L. Ed. 2d 667, 681, 98 S. Ct. 2674, 2684, citing *McCray v. Illinois* (1967), 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056.) Nor can the defendant engage in a routine "fishing expedition" at the hearing. See *People v. Cook* (1978), 22 Cal. 3d 67, 92, 583 P.2d 130, 144, 148 Cal. Rptr. 605, 619.

[7]A further limitation on the applicability of the privilege not to identify an informer arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity or of the contents of his communication is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations, the trial court may require disclosure, and if the government withholds the information, the court may dismiss the action. Also, if the informer helped set up the commission of the crime and was present at its occurrence, the informer must be disclosed. *Roviaro v. United States* (1957), 353 U.S. 53, 60-61, 1 L. Ed. 2d 639, 645, 77 S. Ct. 623, 628; *Portomene v. United States* (5th Cir. 1955), 221 F.2d 582; *United States v. Conforti* (7th Cir. 1952), 200 F.2d 365; *Sorrentino v. United States* (9th Cir. 1947), 163 F.2d 627; see also *Scher v. United States* (1938), 305 U.S. 251, 254, 83 L. Ed. 151, 154, 59 S. Ct. 174, 176.

154, 156, 57 L. Ed. 2d 667, 672, 98 S. Ct. 2674, 2676.) We, of course, express no opinion as to whether defendant will prevail at the hearing, and nothing contained herein is otherwise intended.

We next address the second basic issue in the case, which also involves the search warrant. Defendant contends that the prosecutor committed reversible error by repeatedly relating to the jury the contents of the search warrant, including the hearsay allegations of the undisclosed informer. Defendant also claims the prosecutor made improper allusions, inferences and suggestions with regard to the search warrant which prejudiced defendant. During oral argument, the State was not able to give any valid reason for the prosecutor's actions. In its brief, the State basically claims that defendant waived any error by not making specific objections and not including some of the objections in his post-trial motion, and that the prosecutor's actions constituted only harmless error.

During the prosecutor's opening statement, the following occurred:

> "[Prosecutor]: I expect the evidence will show you that on October 10th, 1979, [a police officer] from Narcotics and Gang Crimes Division of the Chicago Police Department, received information through an informant—and you will learn what an informant is, that their identity is usually kept confidential, for a variety of reasons, one of which is that it is a dangerous area for informants to be in, it's important in order to allow a free flow of information to the police that they are kept secret. This informant gave information to [the police officer], information regarding bringing cocaine into the City of Chicago—
>
> [Defendant's attorney]: Objection.
>
> THE COURT: Overruled.
>
> [Prosecutor]: The evidence will then show that based on this information, [the police officer] began to put into focus a number of things. *** [The police officer], you will learn, did some other things, and what he did was, after finding out that this car was out at 5874 North Ridge, he put this information together and applied for a search warrant—and you will learn what a search warrant is, it's a judicially approved permission to the police to search for specific items as listed in the warrant. This warrant was for one Gilberto Garcia and for the first—
>
> [Defendant's attorney]: Objection, Judge.
>
> [Prosecutor]: —floor apartment—
>
> [Defendant's attorney]: Objection.

THE COURT: Sustained."

During the redirect examination of the police officer who obtained the search warrant, the following occurred:

> "[Prosecutor]: Is there some other document, other than the police reports, that contains the information given to you by the informant and what if anything, you did relative to the information received by you from the informant?
>
> [Police officer]: The search warrant, sir."

The officer then proceeded to testify that assistant State's Attorney Grossi had signed each page of the warrant and that each page had also been signed by a police sergeant.

Later, the State was permitted to call assistant State's Attorney Grossi, who testified to matters concerning the search warrant which were completely irrelevant. The testimony, however, emphasized the assumed importance of the warrant and the credibility of its contents. Grossi testified:

> "[People's exhibit No. 1] is a search warrant which I approved on the morning of the 11th of October, while I was at the First District on an unrelated robbery charge. *** After we approve a search warrant we are required to sign the search warrant with our name, search warrant number and the date we have approved the search warrant, and I have signed my name on all three pages of the warrant and of the affidavit. *** I put the search warrant number [to show] that we approve[d] and I placed the date of approval, which is 10/11/79. *** [I gave my approval] shortly before 3:00 in the morning. *** [T]he warrant was not signed by the judge until after I approved it."

The search warrant was again brought to the jury's attention by the prosecutor during his cross-examination of defendant. The prosecutor repeatedly asked defendant whether the police officers showed him the search warrant. Defendant testified that he was not shown the warrant until after the search was conducted. The prosecutor then asked defendant whose name was on the search warrant. Defendant's attorney objected and moved for a mistrial. The court denied the motion. In addition, the following occurred:

> "[Prosecutor]: So you know they wanted you, didn't you?
>
> [Defendant]: I didn't know they wanted me, because they showed me the search warrant.
>
> [Prosecutor]: And then you knew they wanted you?
>
> [Defendant]: They come with the search warrant in my name. If they want me, no."

In his closing argument, the prosecutor again referred to the

hearsay allegations of the undisclosed informer:

"He [the defendant] was in Murfreesboro, Tennessee. That's 900 miles.

Now, to go 900 miles in 12 hours, you have to drive 75 miles. Man, I was speeding, but to go 900 miles at 75 miles an hour will take you six hours. So, if you are there at 12:20 Miami time, 11:20 Chicago time, you'd arrive up here in Chicago at 7:00 o'clock at night, and that's what happened. He arrived at about 9:00 or 10:00 o'clock. He talked to some people and then what happened is, an informant called the police at around 11:00 or 11:15. The dope is already here. The dope is already in the apartment. Contact has been made. The wheels are turning. It's going to be sold.

The police know about it. They go, they want to corroborate. Is this informant telling us the truth? Is there really a Cadillac there? Is the car there? Does the building look like what it is supposed to look like? Is the address right?

They go there and find out, yes. [The police officer says to another police officer], you stay here with another investigator, I'm going to go get the search warrant prepared. Watch the house. Don't let anybody leave, because, if they leave, they may have the drugs with them."

Plainly, the prosecutor's references and suggestions regarding the search warrant related to the jury that the informer had told the police that defendant was responsible for bringing the cocaine to Chicago and into the apartment and that defendant was the occupant of the apartment. Also, in an apparent attempt to give credibility to the hearsay information of the informer, the prosecutor demonstrated, through testimony that was totally irrelevant to any issue properly before the jury, how the police and State's Attorney's office "authenticate" a warrant. We believe that the prosecutor utilized and took advantage of hearsay allegations and that his actions were improper. (*Moore v. United States* (1976), 429 U.S. 20, 50 L. Ed. 2d 25, 97 S. Ct. 29; see *People v. Fryer* (1914), 266 Ill. 216, 220, 107 N.E. 134, 136, where the court held that it was improper to introduce a search warrant into evidence and that the warrant was not legal evidence of any fact in the case.) Here, the error was compounded by the fact that the informer remained unidentified and therefore unavailable for examination by defendant. Also, since defendant was charged with *possession* of cocaine, the impressions conveyed to the jury by the improper actions of the prosecutor go to the very heart of the case.

Defendant testified that he had lived with his family in Florida for

the last 5 years. He testified that at the time of this event, he was living at a specific address in Miami, Florida, with his wife, two children, his father, his mother and his sister's daughter. Shortly before midnight on October 9, 1979, defendant left Miami with his wife to go to Chicago for the purpose of visiting his sister and her newborn son. Defendant was driving a white Cadillac which had Florida license plates. During the trip, he stopped for a short time in Murfreesboro, Tennessee, where he made a phone call that was registered by the telephone company. He arrived in Chicago shortly before midnight on October 10, 1979, and went directly to his sister's apartment. His sister, his niece, and his sister's young son were in the apartment.

About 1 a.m., defendant and his wife went to sleep in one of the bedrooms. At approximately 10:30 a.m., the police knocked on the door, waking defendant and his wife. The police entered the apartment pursuant to the search warrant. At that time, in addition to the people already mentioned, defendant's sister's husband and a friend of defendant's sister were present in the apartment.

The police searched the apartment and eventually found a package containing cocaine hidden in the kitchen. Defendant was not in the kitchen when the package was found. When questioned by the police, defendant denied knowing of the existence of the package or its contents.

Defendant identified photographs of his home in Florida, and he identified his keys to the house. He also testified that he maintains a mortgage on the house and a bank loan on the white Cadillac. Title to the house and title to the automobile are held by lending institutions. Defendant also testified that he never lived in or occupied the apartment where the cocaine was found. He also testified that he never paid rent, gas or electric bills for the apartment. The apartment was leased to defendant's sister and her husband. Defendant's wife and his father testified, and their testimony corroborated defendant's testimony.

■ Under the circumstances, we believe that the case is factually close, and therefore fairness demands that the prosecutor's improper actions not be overlooked and that defendant be granted a new trial. In addition, we believe that the prosecutor's actions constituted plain error as they were highly prejudicial and adversely affected substantial rights of the defendant which are necessary for a fair trial. *People v. Morris* (1979), 79 Ill. App. 3d 318, 331, 398 N.E.2d 38, 45; *People v. Bingham* (1979), 75 Ill. App. 3d 418, 426, 394 N.E.2d 430, 437; *People v. McKinney* (1978), 62 Ill. App. 3d 61, 64, 378 N.E.2d 1125, 1128.

Accordingly, the judgment is reversed. The case is remanded for an evidentiary hearing on defendant's motion to suppress as stated herein and for a new trial.

Reversed and remanded.

WHITE, P. J., and McGILLICUDDY, J., concur.