**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James W. McDONALD,
Defendant-Appellant.**

**Nos. 82–1350, 82–1351.**

United States Court of Appeals,
Seventh Circuit.

Argued May 23, 1983.

Decided Dec. 12, 1983.

Rehearing and Rehearing In Banc
Denied Feb. 6, 1984.

Michael B. Nash, Chicago, Ill., for defendant-appellant.

Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUDAHY, POSNER and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

Defendant-appellant, James McDonald, appeals his conviction in the United States District Court, Northern District of Illinois, for mail fraud in violation of 18 U.S.C. § 1341, possession of stolen mail in violation of 18 U.S.C. § 1708, bank theft in violation of 18 U.S.C. §§ 2113(b), (c), and interstate transportation of a stolen security in violation of 18 U.S.C. § 2314. We affirm.

## I.

The evidence revealed that on the morning of June 5, 1979, a confidential informant notified Detective Richard Smith of the Chicago Police Department, Narcotics Unit, that he had been offered cocaine by a person known as "James" in the "front room" of "James'" apartment at 2701 S. Indiana, Apt. 1907, Chicago, Illinois. The informant used the cocaine and experienced the same "high" as he had on previous occasions when using cocaine. Upon leaving "James'" apartment, the informant observed an additional quantity of cocaine in a plastic bag in the "front room" of the apartment. Detective Smith had known this informant for some eight months and had received accurate information on six separate occasions, each of which resulted in an arrest. Based upon this informant's past reliability, Detective Smith compiled the information in an affidavit which he signed, had approved by an Assistant State's Attorney, and presented, along with a search warrant, to Judge Joyce of the Cook County Circuit Court. The search warrant provided for Detective Smith to "search 'James' Male/Negro Approx. 45 yrs. 5'10 175 lbs. Blk. hair and 2701 S. Indiana Apartment # 1907 Chicago, Cook, Ill. and seize Cocaine: to wit a Narcotic Drug &

Proof of Residency." After determining that probable cause existed to search "James" and 2701 S. Indiana, Apt. 1907, Chicago, Illinois, Judge Joyce approved and signed the search warrant at 10:52 a.m., June 5, 1979.[1]

Later that day, at approximately 3:00 p.m., Detective Smith and four other officers of the Chicago Police Department, Narcotics Unit, arrived at 2701 S. Indiana, Apt. 1907 and knocked on the door. Defendant McDonald opened the door, identified himself as "James," was given a copy of the search warrant, and was escorted to the living-bedroom of his studio apartment. Upon entering the living-bedroom, Detective Smith observed "a crushed plant and some white powder" on the coffee table which he believed to be marijuana and cocaine. Detective Smith seized these items, arrested and handcuffed McDonald, and ordered him to remain seated at the dining table.

Smith next observed a handgun and a valise (similar to an artist's portfolio with dimensions of 3' × 3' × 2") with the top flap open exposing what appeared to be pieces of mail, on the floor of the living-bedroom. Smith retrieved some pieces of the mail, and upon closer examination, realized that none of it was addressed to a "James" nor 2701 S. Indiana, Apt. 1907, Chicago, Illinois. Suspecting theft, Smith seized the valise and its contents.

While continuing to search for cocaine and proof of residency, Detective Smith found a second handgun in the kitchen closet and a manila envelope containing a powder he believed to be cocaine along with a one kilo gold bar and some gold coins in the bathroom closet.[2] During this search De-

---

1. At the time in question, the tests for determining whether an informant's statements provided the basis for a finding of probable cause were set forth in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In accord with these tests, the informant's statements in this instance contained the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were,

and the informants' record of providing accurate information in the past showed his reliability. We also note that the statements satisfied the present "totality of the circumstances" test set forth in *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

2. Detective Smith seized the second handgun and the powder believed to be cocaine. According to the defendant's testimony at the Motion to Suppress hearing, he (McDonald)

tective Smith also discovered and seized credit cards, auto insurance cards, drivers licenses, money orders, and various loan papers, many inscribed with names and addresses other than James McDonald residing at 2701 S. Indiana, Apt. 1907, Chicago, Illinois.

Following this search, Detective Smith transported McDonald to the Chicago Police Department and notified the United States Postal Service that he had discovered numerous pieces of suspiciously misdirected mail. Postal Inspectors Dodd and Tomaino arrived at police headquarters and, along with Detective Smith, reviewed the materials found in the valise, initialed each item, and transferred them to an evidence locker at the Main Post Office, Chicago, Illinois.

On February 3, 1981, a Federal Grand Jury returned a sixteen count indictment against McDonald which included one count of mail fraud in violation of 18 U.S.C. § 1341, six counts of possession of stolen mail in violation of 18 U.S.C. § 1708, eight counts of bank theft in violation of 18 U.S.C. §§ 2113(b), (c), and one count of interstate transportation of a stolen security in violation of 18 U.S.C. § 2314. On February 6, 1981, McDonald pleaded not guilty to all counts. On March 26, 1981, McDonald filed a Motion to Suppress the evidence seized from his premises, claiming that no lawful search warrant existed for the search of his premises at the time police officers entered his apartment. The United States District Court for the Northern District of Illinois conducted an extensive three-day hearing on the Motion to Suppress during September, 1981.

At the hearing, McDonald claimed that the warrant which police officers presented to him upon their arrival contained no physical description of himself, no apartment number, and no judge's signature. McDonald testified that just before he was taken to the Chicago Police Department he had placed this warrant on the dining table and had given Detective Smith his key chain, which contained apartment and car keys, because Detective Smith "wanted to search my car." McDonald further testified that the following day, after posting bond, he returned home and found a search warrant on the dining table in the very same position he had left it the previous day but that this warrant contained a physical description of McDonald, the apartment number, and a judge's signature. The district court found, from the evidence received at the Motion to Suppress hearing, that "[t]he facts asserted by the defendant are not believable," and that "the search warrant was in existence at the time of the search and properly presented" to McDonald at approximately 3:00 p.m. June 5, 1979, the time that police officers entered McDonald's apartment.

On January 4, 1982, McDonald filed a Motion for Rehearing on the Motion to Suppress claiming that he was denied "a fair and impartial hearing." The trial judge scheduled the Motion for Rehearing on January 6, 1982, the date set for trial in this matter, and at that time, McDonald filed a Motion for Continuance in order to obtain new counsel. The judge denied McDonald's motions for rehearing and continuance to obtain new counsel but did allow a continuing motion for mistrial on the basis of incompetent counsel.[3]

---

asked the police to take and inventory the one kilo gold bar and the gold coins so that he would be assured of their return.

**3.** On February 1, 1982, the trial judge issued a Memorandum Opinion and Order in response to McDonald's motions for rehearing and continuance to obtain new counsel. The judge stated in part:

"The defendant first complains that he was denied a fair and impartial hearing by me on the motion to suppress evidence. The defendant complains that I found his testimony at the hearing to be unbelievable and that

there was no basis in the record for such a finding. There clearly was. The defendant's testimony conflicted directly with the testimony of Officer Smith, and I believed Officer Smith.

\* \* \* \* \* \* .

"There was no reason apparent to the court why Officer Smith would have done what defendant claimed he did—namely, conduct an illegal search at 11:00 a.m. (at the same time he was appearing before a state court judge obtaining a search warrant) and then

On January 27, 1982, the jury returned a verdict of guilty on all sixteen counts. On February 1, 1982, the trial judge, in response to the continuing motion for mistrial on the basis of incompetent counsel, ruled that "at no time during the trial did I believe that [defendant's counsel] was incompetent or that his representation of the defendant had fallen below the 'minimum standard of professional representation.'" On February 23, 1982, the trial judge entered judgment on the verdict and, the following day, sentenced McDonald to ten years in prison.[4]

On appeal, McDonald contends:

A. That the district court erred by not allowing a *Franks* hearing on the Motion to Suppress.

B. That the search of appellant's apartment did not fall within the "plain view" exception to the search warrant requirement.

C. That appellant was denied his sixth amendment right to effective assistance of counsel.

We shall consider these issues individually.

## II.

### A. *FRANKS* HEARING

Appellant McDonald contends that the evidence presented at the hearing on the Motion to Suppress entitled him to a hearing under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) ("*Franks*"). A *Franks* hearing affords a defendant the opportunity to show, by a preponderance of the evidence, that the warrant affidavit contained perjury or a reckless disregard for the truth. If the defendant meets this burden, the court will set aside that "false material" contained in the warrant affidavit, and if probable cause cannot be established from the valid and truthful portion of the affidavit, the entire

'legalize' the search by obtaining an after-the-fact warrant."

4. The sentence consisted of one maximum five-year prison term for violation of 18 U.S.C. § 1341, six maximum five-year prison terms

search warrant is deemed to be invalid and the ensuing search is void. *Franks,* 438 U.S. at 155–56, 98 S.Ct. at 2676–77.

To qualify for a *Franks* hearing, the defendant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement [was] necessary to the finding of probable cause...." *Franks,* 438 U.S. at 155–56, 98 S.Ct. at 2676. It is appellant's position that he qualifies for a *Franks* hearing because he made a "substantial preliminary showing" that Detective Smith intentionally falsified the warrant affidavit and that the false statement was necessary for the finding of probable cause. McDonald claims that contrary to Detective Smith's affidavit, he did not offer cocaine to anyone on the morning of June 5, 1979, at 2701 S. Indiana, Apt. 1907, Chicago, Illinois. To support his position, McDonald relies upon his own self-serving testimony that he remained on his boat in the Triplex Boat Marina, Riverdale, Illinois, from June 3, 1979, until 8:00 a.m. on June 5, 1979, and the testimony of one Ronald Nash, who arrived on McDonald's boat at 11:00 p.m. on June 4, 1979, and left sometime during the early morning hours on June 5, 1979, while McDonald was still asleep.

Our review of the record on the Motion to Suppress reveals that the appellant never formally requested a *Franks* hearing. The district court, therefore, had no opportunity to directly rule on whether or not appellant was entitled to such a hearing. "It is a well-established general proposition that a litigant cannot present to this court as a ground for reversal an issue which was not presented to the trial court and which it, therefore, had no opportunity to decide." *Holleman v. Duckworth,* 700 F.2d 391, 394–

for violation of 18 U.S.C. § 1708, eight maximum ten-year prison terms for violation of 18 U.S.C. §§ 2113(b), (c), and one maximum ten-year prison term for violation of § 2314, to run concurrent with each other.

95 (7th Cir.1983). The possibility of a *Franks* hearing, however, was raised by both parties and alluded to by the district court on numerous occasions. Furthermore, the district court, in a Memorandum Opinion and Order, thoroughly analyzed the issue of a *Franks* hearing as relating to incompetency of counsel.[5] Because the issue was briefed by both parties and presented to and addressed by the district court we believe it proper to rule on the issue of the *Franks* hearing.

According to the Supreme Court in *Franks:*

"where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."

438 U.S. at 155–56, 98 S.Ct. at 2676.

Additionally,

"[t]he deliberate falsity or reckless disregard whose impeachment is permitted ... is only that of the affiant, not of any nongovernmental informant."

*Id.* at 171, 98 S.Ct. at 2684.

■ The evidence presented at the Motion to Suppress hearing reveals that the appellant failed to make a "substantial preliminary showing" that the affiant, Detective Smith, knowingly and intentionally, or with reckless disregard for the truth, included a false statement in his affidavit. Appellant relies solely upon his own self-

serving testimony and that of Ronald Nash to establish that he (McDonald) was not at his apartment during the morning hours of June 5, 1979, and, therefore, could not have offered cocaine to an informant during those hours. This testimony, as presented, attacks the truth of the informant's statements, not the statements of the affiant, Detective Smith. According to the language of *Franks,* this attack upon the *informant's* truthfulness does not satisfy the "substantial preliminary showing" of affiant falsity required for a *Franks* hearing. "[A]llegations that ... an informant whose story was recited by an affiant was lying, are insufficient to require a *Franks* hearing, since the falsity or recklessness alleged is not that of the affiant, but that of the third party." *United States v. Dorfman,* 542 F.Supp. 345, 366 (N.D.Ill.), *aff'd,* 690 F.2d 1217 (7th Cir.1982). *See also, United States v. Skramstad,* 649 F.2d 1259, 1265 (8th Cir. 1981); *United States v. Schauble,* 647 F.2d 113, 117 (10th Cir.1981).

Even a broad interpretation of the evidence presented by McDonald at the Motion to Suppress hearing, namely, that no informant existed and Detective Smith intentionally falsified the entire affidavit, fails to mandate a *Franks* hearing. The Court in *Franks* stated:

"There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of

---

5. On February 1, 1982, the trial judge issued a Memorandum Opinion and Order in response to McDonald's motions for rehearing and continuance to obtain new counsel. While discussing the issue of incompetent counsel, the judge alluded to the *Franks* hearing as follows:

"The question is whether [defendant's counsel's] failure to attempt to meet the *Franks v. Delaware* test to challenge the search constituted incompetence of counsel. I do not think that it did. Simply because his client contradicted one of the factual statements of the confidential informant contained in the affidavit does not give an attorney reason to

assert that the *police officer knew* that the confidential informant's statement was false and intentionally used that false statement in his affidavit, or that the officer recklessly incorporated the confidential informant's statement in the affidavit without regard for its truth. Something more is required....

The facts known to the court suggest that there was nothing more to support such an accusation, and that [defendant's counsel's] decision not to pursue the issue was not only not incompetent but was consistent with his ethical obligations ...." (emphasis original) (citations omitted).

reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained."

438 U.S. at 171, 98 S.Ct. at 2684.

The offer of proof in this instance consisted of Ronald Nash testifying that he arrived at McDonald's boat at 11:00 p.m. on June 4, 1979, fell asleep, and woke up when "the television [had] those funny lines." Observing that McDonald was still asleep, Nash left the boat and returned home, while it was still dark, on the morning of June 5, 1979. McDonald testified, on his own behalf, that he left the boat at 8:00 a.m. on June 5, 1979, arrived at the First National Bank at 9:00 a.m. that morning, and at his apartment, 2701 S. Indiana, Apt. 1907, at approximately 10:00 a.m. Nash was unable to testify as to McDonald's whereabouts on June 5, 1979, between the time he left the boat and 10:52 a.m., when the search warrant was issued. Because McDonald is the only one who testified as to his whereabouts during this time, the issue becomes one of McDonald's word against Detective Smith's word.

In sum, the only testimony to support appellant's conclusory statement that no informant existed is appellant's own self-serving statement as to his whereabouts from the time that Nash left the boat until the time that the search warrant in question was issued. The district court found this self-serving testimony to be unbelievable and appellant offers nothing more to support his claim on appeal. Instead he relies upon *People v. Garcia,* 109 Ill.App.3d 142, 64 Ill.Dec. 717, 440 N.E.2d 269 (1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1433, 75 L.Ed.2d 792 (1983), where the Illinois Court of Appeals held that an affidavit submitted by the defendant, claiming that the warrant affidavit was in error, constituted a "substantial preliminary showing"

thereby entitling the defendant to a *Franks* hearing. Said the court:

"Accordingly, if we were to require a defendant to do more than defendant did here to make a substantial preliminary showing under *Franks,* we could be placing an insurmountable burden on a defendant, which would, in effect, deny him a substantial right and guarantee of the 4th [sic] Amendment. In addition, we would be presuming that a police officer was telling the truth in his affidavit. But we would have no basis for making that presumption, and neither would the trial court judge."

109 Ill.App.3d at 146–47, 64 Ill.Dec. at 721, 440 N.E.2d at 273.

■ We believe the Illinois Court of Appeals overlooks the Supreme Court's proviso that "there is, of course, a presumption of validity with respect to the affidavit supporting the search warrant." *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684. To overcome this presumption and support a conclusory statement that no informant existed, the defendant must do more than construct a self-serving statement which refutes the warrant affidavit. The defendant must make a *substantial* preliminary showing. *Accord United States v. Southard,* 700 F.2d 1, 7–11 (1st Cir.), *cert. denied sub nom. Ferris v. United States,* —— U.S. ——, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *Searing v. Hayes,* 684 F.2d 694, 697 (10th Cir.1982); *United States v. Schauble,* 647 F.2d at 116– 17. Accordingly, we hold that, in this instance, where the district court did not believe the appellant's self-serving statement, to support his conclusion that no informant existed, the appellant failed to make a substantial preliminary showing that Detective Smith, knowingly and intentionally or with reckless disregard, falsified the affidavit and, therefore, the appellant was not entitled to a *Franks* hearing.

## B. PLAIN VIEW

Appellant next contends that even if the search warrant was valid, Detective Smith's search of the apartment was illegal. Appellant claims that the warrant only al-

lowed for the seizure of cocaine and proof of residency. It did not allow for the seizure of mail, credit cards, auto insurance cards, drivers licenses, money orders, and various loan papers.

For purposes of this "plain view" issue, appellant does not contest the validity of the search warrant. Instead he claims that because the warrant only allowed for seizure of cocaine and proof of residency "the issue becomes whether the present facts are sufficient as a matter of law under *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) to justify a warrantless seizure."

■ "When a police officer conducting a valid search inadvertently comes across an article not specified in the warrant, but one nevertheless having an incriminating character, it is well-established that he may seize that article as well as any others that are specified in the warrant." *United States v. Jefferson,* 714 F.2d 689, 694 (7th Cir.1983) (citing *Coolidge v. New Hampshire,* 403 U.S. at 465, 91 S.Ct. at 2037); *United States v. Graham,* 638 F.2d 1111, 1115 (7th Cir.), *cert. denied,* 450 U.S. 1034, 101 S.Ct. 1748, 68 L.Ed.2d 231 (1981). This doctrine, commonly known as the "plain view" exception to the warrant requirement applies if:

"(1) the initial intrusion which afforded the authorities the plain view was lawful;

(2) the discovery of the evidence was inadvertent; and

(3) the incriminating nature of the evidence was immediately apparent."

*United States v. Schire,* 586 F.2d 15, 17 (7th Cir.1978). Appellant "concedes the first two requirements were met." The question, then, is whether the seized items not specified in the warrant were of an "immediately apparent" incriminating nature.

■ The United States Supreme Court addressed the issue of "immediately apparent" incriminating evidence in *Texas v. Brown,* —— U.S. ——, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983):

" '[T]he seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.' [*Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980).]

\* \* \* \* \* \*

"As the Court frequently has remarked, probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' *Carroll v. United States,* 267 U.S. 132, 162 [45 S.Ct. 280, 288, 69 L.Ed. 543] (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required. *Brinegar v. United States,* 338 U.S. 160, 176 [69 S.Ct. 1302, 1311, 93 L.Ed. 1879] (1949)."

103 S.Ct. at 1542–43. In addition, this court does "not interpret the 'immediately apparent' requirement to connote apparent at first glance, but rather, apparent without other information than that which the officers properly possessed before their search was over." *United States v. Thomas,* 676 F.2d 239, 244 (7th Cir.1980), *cert. denied,* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 364 (1981); *United States v. Schire,* 586 F.2d at 19. Based upon the information acquired by Detective Smith during his search of appellant's premises, it is clear that the incriminating nature of the items seized, including the mail, credit cards, auto insurance cards, drivers licenses, money orders, and various loan papers, inscribed with names and addresses other than James McDonald residing at 2701 S. Indiana, Apt. 1907, Chicago, Illinois, was "immediately apparent."

■ The search warrant allowed Detective Smith to search for cocaine and proof of residency. It is obvious that pieces of mail addressed to James McDonald, at 2701 S. Indiana, Apt. 1907, Chicago, Illinois, would reveal proof of residency and that envelopes are frequently used to conceal

cocaine. *See, e.g., United States v. Odland,* 502 F.2d 148, 150 (7th Cir.), *cert. denied,* 419 U.S. 1088, 95 S.Ct. 679, 42 L.Ed.2d 680 (1974). The mail found exposed in the open valise, therefore, could properly be viewed while searching for cocaine and proof of residency. Upon seeing that the mail was addressed to parties other than "James" and to addresses other than 2701 S. Indiana, Apartment 1907, the mail became extremely suspicious. In fact, before the search ended the misdirected mail clearly appeared to incriminate McDonald in some type of illegal conduct with the United States mails. In the continued search for cocaine and proof of residency, Smith uncovered credit cards, automobile insurance cards, drivers licenses, money orders, and various loan papers, inscribed with names and addresses other than James McDonald residing at 2701 S. Indiana, Apt. 1907, Chicago, Illinois. A well-trained law enforcement officer, operating under a search warrant that contemplated the uncovering of a criminal cocaine scheme, would instinctively suspect these items to incriminate McDonald in some type of illegal conduct associated either with cocaine transactions or mail tampering. *Accord United States v. Jefferson,* 714 F.2d at 695. Moreover, as the United States Supreme Court stated in *Texas v. Brown,* 103 S.Ct. at 1542, "if, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately." Based upon the evidence presented at the Motion to Suppress hearing, we hold that the mail and other items of identification, uncovered during the search for cocaine and proof of residency, satisfy the "plain view" exception to the warrant requirement and thus were properly seized by Detective Smith.

## C. EFFECTIVE ASSISTANCE OF COUNSEL

Appellant next contends, in a supplementary *pro se* brief, that he was denied effective assistance of counsel. At trial, appellant filed a motion for a continuance to obtain new counsel which the trial judge denied. A written opinion followed in which the trial judge, who presided over the three day hearing on the Motion to Suppress and the fourteen day trial, stated:

"At no time during the trial did I believe that [defendant's counsel] was incompetent or that his representation of the defendant had fallen below the "minimum standard of professional representation." *United States v. Phillips,* 640 F.2d 87, 92 (7th Cir.), *cert. denied,* 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851 (1981).

In fact, as the evidence against the defendant mounted, it became clear that there was no defense to the government's charges. [Defendant's counsel] brought every deficiency of the government's case to the attention of the jury. He overlooked no obvious motions or objections. [Defendant's counsel] vigorously represented the defendant...."

It is well-established that a defendant has the constitutional right to counsel whose performance "meets a minimum standard of professional representation." *United States v. Kalita,* 712 F.2d 1122, 1129 (7th Cir.1983); *United States v. Phillips,* 640 F.2d 87, 92 (7th Cir.), *cert. denied,* 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851 (1981); *United States ex rel. Williams v. Twomey,* 510 F.2d 634, 641 (7th Cir.), *cert. denied,* 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975). This applies whether counsel is appointed or retained. *United States v. Weston,* 708 F.2d 302, 306 (7th Cir.1983); *United States ex rel. Williams v. Twomey,* 510 F.2d at 640.

Furthermore,

"[a] minimum standard of professional representation does not mean representation free of questionable tactical decisions or even what hindsight might suggest were mistakes. It means representation without serious prejudicial blunders which have foreseeable adverse consequences. Implicit in the Sixth Amendment right to counsel in criminal cases is the notion of adequacy."

*Guzzardo v. Bengston,* 643 F.2d 1300, 1305 (7th Cir.), *cert. denied,* 452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981). Finally,

"[w]henever we are asked to consider a charge that counsel has failed to dis-

charge his professional responsibilities, we start with a presumption that he was conscious of his duties to his clients and that he sought conscientiously to discharge those duties. The burden of demonstrating the contrary is on his former clients."

*Matthews v. United States,* 518 F.2d 1245, 1246 (7th Cir.1975).

Upon review of the Motion to Suppress hearing and the 2,282 page trial record we believe that only one of appellant's claims of counsel incompetency merits consideration. That is, whether counsel's failure, in light of appellant's contention that no informant existed, to request a *Franks* hearing and inquire into the identity of the informant at the Motion to Suppress hearing, constitutes incompetency of counsel.

■ Appellant reasons that a request for a *Franks* hearing followed by an inquiry into the informant's identity would have revealed that no informant existed, thus the search warrant would have been invalid and the search would have been void. As we have previously discussed, however, at the Motion to Suppress hearing appellant failed to make a substantial preliminary showing that Detective Smith, knowingly and intentionally or with reckless disregard, falsified the affidavit, thus appellant was not entitled to a *Franks* hearing.

In fact, the trial judge ruled that:

"Simply because [the defendant] contradicted one of the factual statements of the confidential informant contained in the affidavit does not give an attorney reason to assert that the *police officer knew* that the confidential informant's statement was false and intentionally used that false statement in his affidavit, or that the officer recklessly incorporated the confidential informant's statement in the affidavit without regard for its truth.

\* \* \* \* \* \*

[Counsel's] decision not to pursue the issue [of a *Franks* hearing] was not only not incompetent but was consistent with his ethical obligations." (emphasis original).

Counsel cannot be expected to request a *Franks* hearing when the evidence presented is insufficient to warrant such a hearing. Accordingly, we agree with the trial judge and hold that counsel's trial decision not to request a *Franks* hearing easily meets the "minimum standard of professional representation" and we will not further question counsel's tactical judgment. *Accord United States v. Weston,* 708 F.2d at 307.

Appellant relies upon *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), (*"Roviaro"*) to argue that, nonetheless, counsel should have inquired into the informant's identity at the Motion to Suppress hearing. Appellant's reliance upon *Roviaro,* however, is misplaced in light of the Supreme Court's language in *McCray v. Illinois,* 386 U.S. 300, 309, 87 S.Ct. 1056, 1061, 18 L.Ed.2d 62 (1967), that "[t]he *Roviaro* case involved the informer's privilege, not at a preliminary hearing to determine probable cause for an arrest or search, but at the trial itself where the issue was the fundamental one of innocence or guilt." In this instance, appellant seeks the informant's identity at the Motion to Suppress hearing, where the issue is not the defendant's innocence or guilt but the validity of a search warrant. Additionally, the appellant has failed to present us with any case law in support of his legal theory, nor have we found any "constitutional [or] federal evidentiary rule that a defendant, in attacking the existence of probable cause for an arrest or search has a right to learn the identity of an informant." *United States v. Edge,* 444 F.2d 1372, 1375 (7th Cir.), *cert. denied,* 404 U.S. 855, 92 S.Ct. 101, 30 L.Ed.2d 97 (1971); *see also McCray v. Illinois,* 386 U.S. at 312, 87 S.Ct. at 1062–63.

■ In this instance, the record reveals that the only question presented in support of an inquiry into the confidential informant's identity was McDonald's unsupported statement that no informant existed. Defense counsel stated in open court that in order to ascertain the truth regarding the informant's existence, he personally interviewed the state court judge and confirmed that the judge had, in fact, approved the

warrant affidavit containing the informant's statements and signed the search warrant in question on the morning of June 5, 1979. According to the warrant affidavit, the informant advised Detective Smith that an additional quantity of cocaine remained in a specific location of McDonald's apartment, namely the "front room." The subsequent search confirmed that a "white powder" believed to be cocaine was, in fact, found at this location. Considering that the affidavit was approved by the çourt at 10:52 a.m. on June 5, 1979, and the cocaine referred to therein was found after 3:00 p.m. on the same date, it was reasonable to believe that an informant, who had knowledge of the cocaine in McDonald's apartment, did, in fact, exist. In light of the totality of the circumstances, including the informant's information recited in the affidavit, approved by the court, as contrasted with the appellant's unsupported statement that no informant existed, we hold it was well within the "minimum standard of professional responsibility" for counsel not to inquire into the identity of the informant at the Motion to Suppress hearing. *Accord Guzzardo v. Bengston,* 643 F.2d at 1305.

 Appellant also contends, in his supplementary *pro se* brief, that the prosecution withheld evidence favorable to the defendant, specifically the identity of the informant, the valise, and the original indictment, in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Based upon our review of the record, we conclude that the appellant's claims are without merit. In light of our holding that the appellant was not entitled to a *Franks* hearing, the Government certainly had no duty to produce the informant. We fail to understand how production of the valise itself would have aided appellant's cause when it was not the valise but the mail contained therein that was used at trial as evidence of mail fraud, possession of stolen mail, bank theft, and possession of a stolen security. Finally, in response to appellant's claim, in his *pro se* brief, that the indictment under which he was prosecuted was not the original, there was no evidence presented at the trial even suggesting pros-

ecutorial tampering with or substitution of the indictment.

### III.

We affirm the judgment of the district court.