THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN R. FOWLER, Defendant-Appellant.

Second District   No. 2—89—1327

Opinion filed December 13, 1991.

158

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Marilyn Martin, of Chicago, for appellant.

Roger T. Russell, State's Attorney, of Belvidere, and Samuel J. Cahnman, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, John R. Fowler, was charged with the offenses of intimidation and possession of a weapon without a valid firearm owner's identification card. After a jury trial, defendant was convicted of the possession offense and sentenced to 90 days in jail, plus a $1,000 fine. In addition, the trial court ordered the forfeiture of defendant's weapons. The trial court granted defendant's *pro se* motion to reduce sentence and the defendant was released from custody. Defendant appeals his conviction and the order requiring forfeiture. We affirm.

On appeal, defendant contends: (1) his conviction should be reversed because the weapons introduced as evidence at his trial were

seized without probable cause or, in the alternative, the conviction should be reversed and the cause remanded for a hearing at which the defendant may challenge the integrity of the affidavit supporting the search warrant; (2) the trial court abused its discretion in failing to inquire into defendant's fitness after it was apprised of the defendant's involuntary commitment; (3) defendant was deprived of a fair trial due to the prosecutor's questioning of prospective jurors regarding mental institutions; and (4) the trial court lacked the authority to order the forfeiture of defendant's weapons.

On April 3, 1989, a complaint was filed against the defendant, alleging he committed the offense of intimidation of Boone County deputy sheriff David Dylak. (Ill. Rev. Stat. 1989, ch. 38, par. 12—6(a)(1).) On April 3, 1989, a search warrant was issued based on the affidavits of Deputy Dylak and Boone County Sheriff Duane Wirth.

In Deputy Dylak's affidavit, he stated that on the morning of April 1, 1989, the Blackhawk Moving Company requested a patrol car in the vicinity of Herbert Grainery in Herbert. Blackhawk was moving some furniture into a building on the property of the Herbert Grainery and anticipated some possible problems with the defendant, who lived in the immediate vicinity. As Deputy Dylak drove past the grainery, he observed in his rearview mirror a man with a rifle walk into the roadway. The man was accompanied by two large dogs which appeared to be Doberman pinschers. The dogs were growling and barking while attempting to approach the squad car, but the man in the road held them back.

Deputy Dylak continued to observe the armed subject as he reported the situation to the sheriff's office over his police radio. Then he made a U-turn so that he was facing the armed individual, who was still standing on the road. He began to drive slowly toward the individual. As he came within approximately 30 to 50 feet of the armed subject, the subject set his rifle down behind a telephone pole located on the side of the road near the grainery.

The subject was again standing on the roadway with his dogs when Deputy Dylak made contact with him. The dogs were still behaving in a very aggressive manner. The subject inquired as to what Deputy Dylak wanted, peppering his comments with expletives. Deputy Dylak informed the subject that he was a police officer and that he was concerned about the fact that the subject was standing in the roadway with a gun. The subject responded that it was his "f---ing right to bear arms in this country" and there was not a thing Deputy Dylak could do about it. When Deputy Dylak inquired into the subject's name, the subject replied "Jack F---ing Fowler." He then told

Deputy Dylak to "get the f--- out of here" and if Deputy Dylak got out of the car, he would "never see the f---ing road again." Because of defendant's aggressive and abusive behavior towards the Deputy, the immediate threat of the dogs, and the fact that there were other subjects approximately 50 feet from the roadway, Deputy Dylak decided to vacate the immediate area in the interest of officer safety.

Deputy Dylak reported the incident to his supervisor, Sheriff Duane Wirth. Sheriff Wirth drove out to the Herbert Grainery to speak with defendant regarding the incident later that morning. In his affidavit Sheriff Wirth stated that he spoke with John (Jack) Fowler about the confrontation that had occurred earlier that morning with Deputy Dylak. At that time defendant produced a pellet rifle which he claimed was the gun he displayed earlier to Deputy Dylak. The gun did not fit the description of the weapon Deputy Dylak had seen and reported to Sheriff Wirth. The sheriff stated that he believed that the gun actually used during the incident was hidden on John Fowler's premises in close proximity to the area where the incident occurred. Those premises consisted of a grain elevator with attached buildings, a tin one-story building, a wooden one-story building, a motor home, a trailer house and several motor vehicles on the premises. In addition, the sheriff stated that his department ran defendant's name through the State computer and found that he did not have a valid firearm owner's identification card. Defendant's card had expired November 14, 1973.

A search warrant was issued on April 3, 1989, for the premises described in the sheriff's affidavit. The search warrant described the weapon being sought as a rifle with full brown wood stock and heavy steel barrel with large open sights, in addition to a pellet rifle with forearm pump action. The execution of the warrant resulted in the seizure of three rifles, two shotguns, a pistol, a revolver, assorted ammunition and a pellet gun.

Defendant was arrested at the time of the search. After being admonished of his rights, defendant waived his right to counsel and elected to represent himself *pro se.*

After a preliminary hearing, the trial court found probable cause existed to support the offense of intimidation. The State filed an information charging defendant with the offenses of intimidation and possession of a firearm without a valid firearm owner's identification card.

On May 30, 1989, the defendant failed to appear at a status hearing. The prosecutor informed the judge that defendant had been picked up by the De Kalb County sheriff's office and taken to the

Singer Mental Health Center by court order. The defendant was admitted May 22, 1989, and released May 31, 1989.

The Illinois State Police informed defendant by letter dated June 2, 1989, that his firearm owner's identification card had been revoked due to his ineligibility to possess the card as a person who had been committed to a mental health facility within the last five years.

The case proceeded to trial on September 5, 1989. After deliberation, the jury was unable to arrive at a verdict on the intimidation charge, but found the defendant guilty of the misdemeanor count of possessing a weapon without a firearm owner's identification card. Defendant was sentenced to 90 days in jail and a $1,000 fine.

At that time the State requested the forfeiture of the weapons seized in the case. The trial court entered an order of confiscation and destruction of the weapons. The court granted defendant's motion to stay the destruction of the weapons pending this appeal.

■ Defendant contends that his conviction must be reversed because the weapons introduced as evidence at his trial were seized without probable cause. The State contends that defendant has waived this issue on appeal because it was not raised prior to trial, at trial or in any post-trial motions filed by defendant. We agree with the State's contention.

In *People v. Caballero* (1984), 102 Ill. 2d 23, our supreme court discussed the purpose of the waiver rule. The general rule followed by the courts is that failure to raise an issue in the written motion for a new trial constitutes waiver of that issue and it cannot be urged as grounds for reversal on review. (*People v. Enoch* (1988), 122 Ill. 2d 176; *People v. Caballero*, 102 Ill. 2d 23; *People v. Pickett* (1973), 54 Ill. 2d 280.) The court stated that when no post-trial motion has been filed specifying the grounds upon which the defendant relies for reversal, the trial court is denied an opportunity to grant a new trial, if warranted. (*Caballero*, 102 Ill. 2d at 31.)

> "This casts a needless burden of preparing and processing appeals upon appellate counsel for the defense, the prosecution, and upon the court of review. Without a post-trial motion limiting the consideration to errors considered significant, the appeal is open-ended." (*Caballero*, 102 Ill. 2d at 31.)

The court clarified the holding of *Caballero* in *People v. Enoch* (122 Ill. 2d 176), in which the court stated the presence of both a trial objection and a written post-trial motion raising the issue are necessary to preserve an issue for review.

In the present case, defendant failed to present the issue of lack of probable cause in a motion to suppress, as an objection at trial or

in his post-trial motion. Accordingly, the issue is waived for the purposes of this appeal.

Defendant asks us to consider this issue under the plain error doctrine. (134 Ill. 2d R. 615(a).) However, we need not consider whether the issue is plain error because we conclude no error occurred.

Probable cause for the issuance of a search warrant exists if the facts set forth in an affidavit would cause a reasonable person to believe a crime has been committed and evidence of that crime is in the place to be searched. (*People v. Stewart* (1984), 104 Ill. 2d 463, 476.) Probable cause is not to be determined by a legal technician, but instead by a reasonable and prudent person dealing with the practical considerations of everyday life. (*People v. Free* (1983), 94 Ill. 2d 378, 400.) The issuing judge's determination of probable cause for a search warrant should be paid a great deal of deference. *People v. Gacy* (1984), 103 Ill. 2d 1, 21; *People v. McCoy* (1985), 135 Ill. App. 3d 1059, 1064.

To determine probable cause, a sufficient nexus between the criminal offense, the items to be seized and the place to be searched must be established. (*People v. McCoy*, 135 Ill. App. 3d at 1066.) The evidence in this case supports the trial court's finding of probable cause.

Deputy Dylak stated in his affidavit that the defendant had threatened him while defendant was standing on the roadway after placing his weapon behind a nearby telephone pole. The deputy stated that he was unable to exit his vehicle because of the threat to his safety posed by defendant and his dogs. The incident occurred near defendant's residence. Deputy Dylak described the weapon he had seen to Sheriff Wirth. Sheriff Wirth visited defendant at his residence. Defendant showed the sheriff a weapon which he professed to be the one Deputy Dylak had seen. It did not fit the description the deputy had given Sheriff Wirth. In his affidavit, the sheriff stated that he believed the weapon involved in the intimidation incident was located somewhere at defendant's residence. Later, Sheriff Wirth discovered defendant's firearm owner's identification card had expired November 14, 1973.

Under these circumstances, it was probable that the weapons would be located at defendant's residence. We conclude that sufficient facts existed to cause a reasonable person to believe the guns would be found in defendant's residence.

■ In the alternative, defendant contends the trial court erred in failing to hold a formal *Franks* hearing. (See *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674.) *Franks* requires a substantial showing that a false statement knowingly and in-

tentionally or with reckless disregard for the truth was included by the affiant in the warrant affidavit before a defendant is entitled to a hearing. (*People v. Garcia* (1982), 109 Ill. App. 3d 142, 145.) However, that showing need only be preliminary, and, thus, the defendant is not required to prove his charge by a preponderance of the evidence before he is entitled to a hearing under *Franks*. (*Garcia*, 109 Ill. App. 3d at 145.) However, defendant must nonetheless make a preliminary substantial showing.

In the present case, defendant never moved to quash the warrant or to present evidence concerning his allegations that the affidavits of Deputy Dylak and Sheriff Wirth were knowingly and intentionally false. Defendant merely stated on the record his belief that the State's Attorney and the law enforcement officers harbored a personal vendetta against him and that the conduct of the officers and prosecutors was motivated by a conspiracy to harass and defame him. At no time did defendant ask for a *Franks* hearing.

Although defendant appeared *pro se* at trial, a *pro se* litigant is not entitled to any special consideration. (*People v. Davenport* (1985), 133 Ill. App. 3d 553, 558.) A *pro se* litigant must comply with the rules of procedure required of attorneys, and a court will not apply a more lenient standard to *pro se* litigants. (*People v. Bond* (1989), 178 Ill. App. 3d 1020, 1023.) This is so because when a defendant represents himself, he assumes the responsibility for conducting his own defense and is not entitled to favored treatment. (*People v. Amos* (1990), 204 Ill. App. 3d 75, 80-81.) We cannot give defendant special consideration due to his failure to raise these allegations at the appropriate time and in the appropriate manner.

Defendant also asks the court to consider this issue under the doctrine of plain error. The plain error doctrine permits a court of review to notice waived errors if "either the evidence is closely balanced or 'the error is so fundamental and of such magnitude that the accused was denied a fair trial' and remedying the error is 'necessary to preserve the integrity of the judicial process.' " (*People v. Henderson* (1990), 142 Ill. 2d 258, 311, quoting *People v. Herrett* (1990), 137 Ill. 2d 195, 210.) However, we conclude no plain error exists.

In order to overcome the presumption of validity with regard to the search warrant affidavit, defendant must make a substantial preliminary showing that false statements were deliberately included in the affidavit. (*People v. Stewart* (1984), 105 Ill. 2d 22, 39.) Defendant failed to make the threshold showing necessary under *Franks* that the affidavit contained intentional misstatements entitling him to a *Franks* hearing.

■ Next, defendant contends on appeal the trial court abused its discretion in failing to inquire into defendant's fitness for trial after it was apprised of defendant's involuntary commitment during the pendency of the proceedings against him. Although defendant failed to raise this issue in his post-trial motion, we will address it because it would violate the fundamental constitutional guarantee of due process to convict a defendant who is mentally unfit to stand trial. *Pate v. Robinson* (1966), 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836; *People v. Eddmonds* (1984), 101 Ill. 2d 44, 56; *People v. Jones* (1982), 109 Ill. App. 3d 120, 127.

Section 104—10 of the Code of Criminal Procedure of 1963 provides:

> "A defendant is presumed to be fit to stand trial or to plead, and be sentenced. A defendant is unfit if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." (Ill. Rev. Stat. 1989, ch. 38, par. 104—10.)

The issue of defendant's fitness for trial may be raised by the defense, the State, or the court at any time before, during or after trial. (Ill. Rev. Stat. 1989, ch. 38, par. 104—11(a).) Once a *bona fide* doubt of defendant's fitness is raised, the court shall order a determination of the issue before proceeding further. Ill. Rev. Stat. 1989, ch. 38, par. 104—11(a).

The question of whether a *bona fide* doubt of fitness has been raised is largely within the discretion of the trial court. (*People v. Eddmonds*, 101 Ill. 2d at 56; *People v. Murphy* (1978), 72 Ill. 2d 421, 431.) Whether there is a *bona fide* doubt of fitness for trial depends on the facts of each case. (*Murphy*, 72 Ill. 2d at 435; *People v. Lucas* (1986), 140 Ill. App. 3d 1, 7.) The critical inquiry is whether the facts presented a *bona fide* doubt that defendant understood the nature and purpose of the proceedings against him and was able to assist in his defense. *Lucas*, 140 Ill. App. 3d at 7.

Fitness speaks only to a person's ability to function within the context of a trial; it does not refer to sanity or competence in other areas. (*Murphy*, 72 Ill. 2d at 432-33; *People v. Bivins* (1981), 97 Ill. App. 3d 386, 389.) A person can be fit for trial although his mind may be otherwise unsound. (*Murphy*, 72 Ill. 2d at 432-33; *Bivins*, 97 Ill. App. 3d at 389.) No single factor in itself raises a *bona fide* doubt of a defendant's fitness to stand trial. (*Lucas*, 140 Ill. App. 3d at 7.) Even the fact that defendant suffers some mental disturbance or requires psychiatric treatment does not necessarily raise a *bona fide* doubt. *Bivins*, 97 Ill. App. 3d at 389.

In the present case, defendant clearly understood the nature of the proceedings against him. He was able not only to assist in his defense but also to conduct his own defense in a competent manner. The record discloses that he effectively cross-examined the State's witnesses and examined witnesses of his own. He also filed numerous motions with the court. In addition, he, himself, testified in a lucid and coherent manner concerning the events relating to the offense. The only evidence defendant now asserts raised a *bona fide* doubt as to his fitness is that he was involuntarily committed to a mental health institution on May 22, 1989. We do not believe this fact is sufficient to raise a *bona fide* doubt in light of the totality of the circumstances.

Although defendant went to trial on September 5, 1989, his earlier commitment was of limited duration. He was committed on May 22, 1989, and released May 31, 1989. Upon discharge, his condition was undiagnosed, and he was released to his own care. The record discloses that the De'Kalb County court ordered his commitment because he had threatened his estranged wife in the presence of Genoa police officers. In *People v. Shaw* (1972), 6 Ill. App. 3d 540, the court found, under similar circumstances, the fact that defendant was hospitalized was not, in itself, sufficient to raise a *bona fide* doubt of fitness to stand trial. (*Shaw*, 6 Ill. App. 3d at 542.) Considering the facts of this case in totality, we cannot say a *bona fide* doubt as to defendant's fitness to stand trial was raised. Accordingly, the trial court did not abuse its discretion in failing to order a fitness hearing.

■ Defendant also contends on appeal that he was deprived of a fair trial due to the prosecutor's questioning of prospective jurors during *voir dire* regarding their experience with mental illness and mental institutions. Again, defendant failed to object to this question at trial and failed to include this issue in his post-trial motion. As we stated previously, a *pro se* litigant must comply with the rules of procedure required of attorneys, and a court will not apply a more lenient standard to *pro se* litigants. (*People v. Bond*, 178 Ill. App. 3d at 1023.) To preserve an alleged error in *voir dire*, a party must raise an objection and must also specify the objection in a written post-trial motion. *People v. Enoch*, 122 Ill. 2d at 187-88; *People v. Tucker* (1989), 186 Ill. App. 3d 683, 689.

Defendant made no objection to this question during *voir dire*, nor was the matter mentioned in defendant's post-trial motion. Accordingly, defendant waived this issue for the purposes of review.

Nevertheless, defendant asks this court to consider the issue under the doctrine of plain error. We decline to do so because we find no

reversible error occurred. Defendant made no showing of any resulting prejudice from the remarks. (*Tucker*, 186 Ill. App. 3d at 689.) Thus, the error was harmless in that defendant did not demonstrate how he was prejudiced by the remarks, other than the bald claim that he was prejudiced. See *Tucker*, 186 Ill. App. 3d at 689-90.

■ Lastly, defendant contends that the trial court lacked authority to order the forfeiture of defendant's weapons. We disagree.

Section 24—6 of the Criminal Code of 1961 provides that upon conviction of an offense in which a weapon was used or possessed by the offender, any weapon seized shall be confiscated by the trial court. (Ill. Rev. Stat. 1989, ch. 38, par. 24—6.) Thus, the question before this court is whether a conviction of the possession of firearms without a valid Illinois firearm owner's identification card is "an offense in which a weapon was used or possessed by the offender." We hold that it is.

In *People v. Green* (1977), 45 Ill. App. 3d 506, 509, the court stated that, by enacting section 24—6, our legislature is presumed to have determined that the retention of weapons used in the commission of certain crimes by persons convicted of those crimes is irresponsible and poses a danger to the public welfare. At that time, section 24—6 set forth specific crimes for which weapons could be confiscated. Section 24—6 was amended in 1981 to authorize the forfeiture of weapons used or possessed in all criminal offenses. See *People v. Earl* (1984), 121 Ill. App. 3d 254.

Possession of a firearm without a valid firearm owner's identification card is a criminal offense, a violation of which is classified as a Class A misdemeanor punishable by up to one year in prison and up to $1,000 in fines. (Ill. Rev. Stat. 1989, ch. 38, pars. 83—2, 83—14.) In the present case, defendant was found guilty and sentenced to 90 days in jail and a $1,000 fine. Accordingly, the trial court had the authority to order the forfeiture of defendant's weapons.

■ In addition, defendant argues that such an order violates the law against double jeopardy. However, defendant failed to raise this issue in his post-trial motion. Although it is waived for the purposes of this appeal, defendant asks this court to consider the issue under the doctrine of plain error. However, defendant failed to cite relevant authority to support his argument.

Supreme Court Rule 341(e)(7) requires that an appellant's brief must contain citations to the relevant authority supporting the argument advanced on appeal. (134 Ill. 2d R. 341(e)(7); see also *Village of Cary v. Jakubek* (1984), 121 Ill. App. 3d 341, 345.) A court of review is entitled to have the issues clearly defined and to be cited pertinent

authority. (*Britt v. Federal Land Bank Association* (1987), 153 Ill. App. 3d 605, 608; *Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 942-43.) Defendant failed to cite any legal authority standing for the proposition that double jeopardy applies in a forfeiture situation. As such, we will not consider the issue on appeal.

The judgment of the circuit court of Boone County is affirmed.

Affirmed.

WOODWARD and GEIGER, JJ., concur.