2020 IL App (2d) 170857-U
No. 2-17-0857
Order filed February 25, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14-CF-939 |
| SCOTT PETERS, | ) ) ) | Honorable Sharon L. Prather, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Jorgensen and Burke concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court did not err in dismissing the defendant's *pro se* section 2-1401 petition.

¶ 2     Following a jury trial, the defendant, Scott Peters, was convicted of the attempted murder (720 ILCS 5/9-1(a)(1), (b)(1), 8-4(a) (West 2014)) of three deputy sheriffs and was sentenced to a total of 135 years' imprisonment. On direct appeal, we affirmed the defendant's conviction and sentence. *People v. Peters*, 2018 IL App (2d) 150650. On July 14, 2017, while his direct appeal was pending, the defendant filed a petition under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2016)), arguing that his conviction was the result of fraud,

misrepresentation, and suppression of evidence. On October 4, 2017, the trial court dismissed the defendant's petition *sua sponte* in a written order. The defendant appeals from this order. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On November 6, 2014, the defendant was charged with six counts of attempted first-degree murder (720 ILCS 5/9-1(a)(1), (b)(1), 8-4(a) (West 2014)) for shooting at McHenry County Sheriff's Deputies Dwight Maness, Khalia Satkiewicz, and Eric Luna. He was also charged with two counts of aggravated battery (*id.* § 12-3.05(e)(2)(i)) and five counts of aggravated discharge of a firearm (*id.* § 24-1.2(a)(3)).

¶ 5     Between April 27 and April 30, 2015, the trial court conducted a jury trial on the charges against the defendant. Deputies Maness, Satkiewicz, and Luna testified that, at 1 a.m. on October 16, 2014, they went to the defendant's residence in Holiday Hills to conduct a well-being check on the defendant's wife. Maness testified that the wellbeing check was performed because they received information from a person in Michigan who said that the defendant's wife, Lisa, was afraid the defendant would kill her. The deputies arrived at the defendant's residence in separate vehicles, without using emergency lights or sirens, and parked about 300 feet from the residence, which had a fence on the east side.

¶ 6     Maness and Satkiewicz went through a driveway entrance to the front door of the residence, while Luna went around to the east side and rear of the house. Luna saw lights on and movement inside but could not see people. Maness and Satkiewicz noticed surveillance cameras on the garage and near the front door. The cameras moved when the deputies moved.

¶ 7     Maness and Satkiewicz knocked loudly on the front door but did not receive any answer. From his position, Luna could hear them knocking and what they were saying. They knocked

again and still did not receive an answer, but Satkiewicz noticed a blind in the window move. After the deputies knocked a third time, the defendant asked, "Who is it?" The deputies announced that they were McHenry County Sheriff's deputies, and the defendant replied, "What do you want?" When the deputies told the defendant that they were there to check on his wife, he told them that there was no problem and that they needed to leave. The deputies explained that they could not leave until they spoke with his wife. The defendant again told them that they needed to leave and that they could not come into the house. The deputies persisted and the defendant ultimately told them to "come on in."

¶ 8 Maness was concerned that he was walking into an ambush, so he told the defendant that he needed to come outside. In response, the defendant then said, "We're going to do this, let's do this. Airborne." When Maness heard "Airborne," he started to take cover and pushed Satkiewicz out of the way as shooting erupted from inside the house through the front door. Luna heard rapid gunfire and ran to the front of the garage, taking cover between a minivan and the garage door.

¶ 9 Maness and Satkiewicz ran for cover. Maness was shot in the lower part of his back. He went around a vehicle and passed Luna, who was at that vehicle. Satkiewicz suffered a gunshot wound to her leg. Luna saw a silhouette of what looked like a man with a rifle to the west side of the garage, near the front door. The defendant shot in the general direction of Satkiewicz. From behind the van, Luna fired eight shots at the defendant. As Maness was trying to return to his squad car, he was shot a second time, in the leg. The defendant called out, "I'm a U.S. Army paratrooper, I hope you're ready to die 'cause I am."

¶ 10 Eventually, additional police officers and paramedics arrived. After the shooting stopped, the police set up a perimeter around the defendant's house. The defendant was arrested later that evening as he was walking toward Crystal Lake near Smith Road and Route 176. He told the

deputies that arrested him that he had "been looking for" them and that he was "the one [they were] looking for." The police then questioned him at the McHenry County Government Center. The police video-recorded the interview. The defendant stated that he believed that the people he shot were intruders. He stopped shooting once he realized that they were police. He fled the scene because he was scared that he would be killed. The defendant stated that he had disposed of the gun in a local waterway. The video-recorded interview was shown at trial. The police recovered the weapon, a Colt AR-15 Harding rifle. Justin Steele, an Illinois State Police firearms specialist, verified that the rifle worked and had fired at least 17 cartridge cases that had been found outside the house.

¶ 11     Detective Caitlynn Kelly testified that she was the evidence officer that processed the scene and collected evidence. She recovered the security camera and motion sensor light from the defendant's front door, three additional cameras, and an observation monitor from the living room. The observation monitor was turned off when she first saw it, which was about nine hours after the incident. She testified that no one else from her department would have had access to the monitor before her. She turned the monitor on, and it provided a visual and audio feed of the front porch. She testified that she did not recover any video or audio recording of the incident from the surveillance system. Kelly also identified a series of photographs of the defendant's front door, depicting what she described as "bullet holes" in the front door.

¶ 12     At the close of the trial, the jury found the defendant guilty of all charges. The trial court subsequently denied defense counsel's motion for a new trial. The defendant then filed a *pro se* motion for new trial alleging ineffective assistance of counsel. The trial court held a hearing on the *pro se* motion pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). The defendant argued that a video-recording from the camera on his front porch, contained on an SD card, was

subpoenaed but it was never shown in court. The defendant also argued that a video expert should have been called to testify that his recorded interview at the police station was edited. The defendant asserted that during the interview he had asked for a public defender, but his request was edited out of the interview. The trial court denied the defendant's *pro se* motion, finding that trial counsel's strategic decisions cannot support a claim for ineffective assistance of counsel.

¶ 13 On June 25, 2015, following a sentencing hearing, the trial court sentenced the defendant on five counts of attempted murder. The trial court sentenced the defendant to two concurrent terms of 55 years' imprisonment for his attempted murder of Maness, two concurrent terms of 55 years' imprisonment for his attempted murder of Satkiewicz, and 25 years' imprisonment for his attempted murder of Luna. The trial court otherwise ordered the sentences to run consecutively. Thus, the defendant was sentenced to a total of 135 years' imprisonment. Following the trial court's ruling, the defendant filed a timely notice of appeal.

¶ 14 On May 13, 2016, while the defendant's direct appeal was pending in this court, the defendant filed in the trial court a "motion for release of impounded evidence." The defendant requested the release of "suppressed or impounded evidence indicative of my innocence," which the defendant claimed was "purposely withheld from the defendant by and in concert with the parties involved in the defendant's trial, these parties being the trial court, the police, the State, and the public defenders." The defendant gave examples of the allegedly withheld evidence. The defendant argued that there was video evidence from his home surveillance system which was not admitted at trial and that Deputy Kelly had perjured herself at trial about the existence of this evidence. The defendant also alleged that the failure to get a video recording from Satkiewicz's patrol car dash-camera was another example of evidence tampering. On May 18, 2016, the trial court denied the motion.

¶ 15    On March 28, 2017, while the direct appeal was still pending, this court entered an order granting, in part, a motion by the defendant to supplement the record on appeal. We allowed the defendant to supplement the record with documents related to October 16 and 22, 2014, search warrants and allowed leave for all counsel working on the appeal to review the impounded documents.

¶ 16    On direct appeal, the defendant argued that he was not proved guilty beyond a reasonable doubt, the *Krankel* hearing was improper, the trial court had not complied with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), he was denied his constitutional right to be present at trial, the State made improper closing arguments, and he had received ineffective assistance of defense counsel. This court found these arguments to be without merit and affirmed the defendant's convictions and sentence. See *Peters*, 2018 IL App (2d) 150650.

¶ 17    On July 14, 2017, the defendant filed a *pro se* petition for relief from judgment pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2016)). The defendant made a variety of claims. The defendant alleged that his conviction was invalid and should be set aside due to fraud, misrepresentation, and misconduct. The defendant alleged that the State withheld initial probable cause evidence from the grand jury and used fraudulent facts to obtain search warrants. The defendant argued that the State failed to use forensic analysis from an independent laboratory to examine his home surveillance system and any glass fragments alleged to be connected to the defendant on his property. The State suppressed evidence, including affidavits, surveillance systems, and opioid medications, by hiding it under other case numbers. The State withheld statements from Dale Long of Michigan and the defendant's wife, Lisa. The State mishandled evidence, specifically the defendant's front and screen doors, so that he was unable to assess bullet and non-bullet damage. The defendant asserted that the State and the police alleged he was killing

his wife but failed to present any evidence to prove this assertion. Finally, the defendant asserted that the State never provided any evidence that would support the Sheriff's office's basis for going to his home on October 16, 2014, and that the State did not call his wife to testify because her testimony would have exposed its fraud and changed the outcome of the case. The defendant asserted that he did not know of these alleged facts until September 24, 2015, and that he had diligently filed his petition. The defendant also attached an affidavit, stating that he had just recently discovered the information contained in his petition through FOIA, reports from police, and through law books. He further averred that information was still being withheld. He attested the issues he raised were important because it showed that the police had no basis to attack his home.

¶ 18 The defendant attached various exhibits to his petition. The defendant included a user's manual for his First Alert surveillance camera system and highlighted that the system recorded audio and video. The defendant also included a copy of a search warrant to search his home, dated October 16, 2014, with case No. 14-MR-590, and a copy of the November 6, 2014, search warrant inventory of the items taken from his home during the search. The defendant highlighted that the following had been removed: shell casings and a .45 caliber magazine; a letter from the Department of Veterans affairs; 27 pill bottles and 1 box of pills prescribed to the defendant; a First Alert wireless receiver with a blue memory card located inside the unit; a Samsung observation monitor; three Samsung cameras; and one First Alert camera. Also attached to the defendant's petition was a December 26, 2014, order, in case No. 14-MR-606, regarding the filing of a "search warrant inventory return" that stated that the items seized would remain in the custody of the sheriff's office. Also included was an October 23, 2014, approved search warrant that requested that the

First Alert wireless receiver and blue memory card be submitted to a forensic expert for forensic examination.

¶ 19    The defendant also attached a copy of a March 22, 2017, motion to unseal documents and to supplement the record, which was filed on the defendant's behalf by the Office of the State Appellate Defender (OSAD) during the preparation of the defendant's direct appeal.  In the motion, OSAD stated that the record did not contain a copy of the October 16, 2014, search warrant and related documents.  OSAD requested that the documents be unsealed, and the record supplemented with them.  (The record indicates that the motion was granted by this court on March 28, 2017, while the defendant's direct appeal was pending.)

¶ 20    The defendant also attached a copy of a sheriff's office report, dated November 20, 2014, which indicates that the digital video system inside Satkiewicz's patrol car was inspected at the sheriff's office evidence facility but that there were no videos recorded on the system past October 14, 2014.  The defendant made handwritten notes on the report.  The defendant questioned why the patrol car video system was not tested until four days after the incident, how the car made it to the evidence facility, and who else had access to the vehicle.  The defendant cited two cases for the proposition that evidence must be preserved.  The defendant also made a handwritten citation to the Law Enforcement Camera Grant Act (50 ILCS 707/1 *et seq*. (West 2018)), which requires that law enforcement agencies that receive grants must have cameras running continuously in their patrol cars.  The report also listed the search warrants conducted on October 16, 22, and 24, 2014. The October 22 and 24 search warrants were to perform forensic examination on various electronic evidence.  The defendant made a handwritten note following the search warrant list, stating that the reporting officer's forensic qualifications were never stated for the record.

¶ 21 Finally, the defendant attached a portion of a letter to him from the assistant appellate defender. In the letter, the assistant appellate defender explained that, on direct appeal, she could only use or reference items or evidence that were used during trial and made a part of the record on appeal. She further stated that "[t]his particular warrant requested a wireless receiver and a card for forensic analysis. I have no idea whether an analysis was ever actually done, or if it was, what the results were. I simply have no basis to raise any challenge to this information in this direct appeal." The defendant had handwritten notes on this letter, noting that his home camera system and his front and screen doors were missing and not used for evidence. He also noted that Satkiewicz's patrol car dashboard camera was missing and that there were three cameras recording his home on the day of the shootings but no evidence.

¶ 22 On August 24, 2017, the State acknowledged at a hearing that it had received the defendant's section 2-1401 petition. On October 4, 2017, the trial court dismissed the defendant's *pro se* section 2-1401 petition in a written order. The trial court held that the defendant's petition was insufficient as a matter of law and that it "contain[ed] no specific factual allegations to support [the defendant's] claims. He has attached to his petition certain documents without any explanation or factual allegations as to their relevancy or what they are allegedly probative of." The defendant filed a timely notice of appeal from the order.

¶ 23 On April 29, 2019, OSAD filed a motion, pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), to withdraw from this matter, stating that the appeal presented no potentially meritorious issues for review. The appellate defender noted that a section 2-1401 petition must be supported by affidavit or other appropriate showing as to matters not of record. The appellate defender stated that the defendant had not offered any evidence, by affidavit or any other comparable evidentiary showing, that: (1) his home surveillance system was turned on and recorded the gun battle; (2)

Satkiewicz's patrol car dash camera had recorded the battle; (3) the defendant's front doors were destroyed or withheld or that the photographs of the doors that were admitted into evidence at trial were inaccurate; or (4) the State withheld statements from Dale Long or the defendant's wife. The appellate defender stated that the defendant also raised other arguments that did not depend on the discovery of new evidence that was not available at the time of trial, but such arguments could not support a claim for relief under section 2-1401. Finally, the appellate defender noted that the defendant argued that his conviction was void. However, the appellate defender asserted that none of the defendant's claims would render the judgment against him void. On May 2, 2019, this court granted OSAD's motion to withdraw and permitted the defendant to proceed *pro se*.

¶ 24                                II. ANALYSIS

¶ 25    On appeal, the defendant argues, *pro se*, that the trial court erred in dismissing his section 2-1401 petition. The purpose of a petition for relief from judgment pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2016)) "is to bring before the trial court facts not appearing in the record that, if known at the time the court entered judgment, would have prevented the judgment's entry." *People v. Bramlett*, 347 Ill. App. 3d 468, 473 (2004). Though a petition under section 2-1401 provides a civil remedy, it applies to criminal cases as well. *People v. Vincent*, 226 Ill. 2d 1, 8 (2007).

¶ 26    To successfully plead a petition for relief, the defendant must show (1) a meritorious claim or defense, (2) due diligence in presenting the claim in the original action, and (3) due diligence in filing the section 2-1401 petition. *People v. Lee*, 2012 IL App (4th) 110403, ¶ 15 (citing *Bramlett*, 347 Ill. App. 3d at 473). "A meritorious defense under section 2-1401 involves errors of fact, not law." *People v. Pinkonsly*, 207 Ill. 2d 555, 566 (2003). A section 2-1401 petition is subject to

dismissal when the petition (1) fails to state a cause of action or (2) fails, on its face, to demonstrate the petitioner is entitled to relief. *Vincent*, 226 Ill. 2d at 8.

¶ 27    A petition for relief from judgment must be filed within two years after entry of the judgment being challenged. 735 ILCS 5/2-1401(c) (West 2016). A petition filed more than two years after judgment will not be considered unless it can be shown that petitioner was "under legal disability or duress or the ground for relief [was] fraudulently concealed." 735 ILCS 5/2-1401(c) (West 2016). The trial court's dismissal of a petition for relief under section 2-1401 of the Civil Code is subject to *de novo* review. *Vincent*, 226 Ill. 2d at 18.

¶ 28    The defendant first argues that he adequately alleged that the search warrants of his property were obtained fraudulently. He argues that the police had no basis to be at his home on October 16, 2014, because the only testimony supporting the warrants was from law enforcement officers, rendering the testimony "conclusory" and "void of facts." He also argues that the deputies who testified as to the reason for going to his home on the night of the shooting were not telling the truth, which was why the person who called the sheriff's office from Michigan, Dale Long, and the defendant's wife were not called to testify. The defendant also alleges *Brady* violations (see *Brady v. Maryland*, 373 U.S. 83 (1963)) in that none of the search warrant "item numbers" are listed anywhere in the record. However, in a petition for relief from judgment, the burden is on the defendant to support his allegations "by affidavit or other appropriate showing as to matters not of record." 735 ILCS 5/2-401(b) (West 2016)). Unfortunately, the defendant does not point to any such evidence. Other than the allegations in his petition, there is no evidence to support the assertion that the deputies who testified were not telling the truth. Further, other than showing the existence of the search warrants and the information included therein, the defendant does not

provide any new evidence or explain how any of that information would have changed the outcome of his trial.

¶ 29    The defendant next argues that he had a surveillance system that recorded both audio and video and asserts that the exhibits attached to his petition show that this system was purposely concealed by the State. However, the exhibits attached to the defendant's petition do not show that there was a surveillance system that was concealed by the prosecution. The inventory from the October 16, 2014, search warrant indicates that there was a First Alert camera and wireless receiver with a blue memory card, a Samsung observation monitor, and two Samsung cameras. This is essentially compatible with Kelly's testimony at trial. She testified that she recovered a security camera and motion sensor light from the defendant's front door, three additional cameras, and an observation monitor from his living room. The defendant also attached a sheriff's report indicating that a forensic search was conducted on the First Alert receiver and blue memory card. The report states that a Detective Asplund executed the search and made a note to "[s]ee Det. Asplund's supplement [*sic*] report." The defendant asserts that "see" meant that a report existed, and that video and audio evidence was recovered or, alternatively, that Asplund was unqualified and lost the recording. However, Asplund's report could also have simply explained that no video or audio evidence was recovered from the receiver and memory card. The bottom line, however, is that, while the defendant has provided speculation, he has not provided any evidence to contradict Kelly's testimony that no video or audio recording was recovered from the defendant's home surveillance system.

¶ 30    The defendant's third contention on appeal is that the State perpetrated fraud by concealing facts. The defendant asserts that, on the day of the shootings, the police broke in his door, brandished firearms and assaulted his home. However, the deputies testified at trial that they went

to the defendant's home because they received a call that the defendant's wife feared that the defendant was going to kill her. The defendant had the opportunity to cross examine the witnesses at trial and to present his version of events. Moreover, the defendant does not allege, in his petition or through supporting evidence, that Long and his wife made statements or explain how any alleged statements would have affected the outcome of his trial. The defendant's self-serving allegation that the State concealed facts is not sufficient to warrant relief under section 2-1401. *People v. Diehl*, 335 Ill. App. 3d 693, 708 (2002).

¶ 31　　The defendant's fourth contention on appeal is that the trial court erred in finding that his petition contained no specific allegations to support his claims. The defendant argues that all the allegations he raised were either supported by exhibits or by the record. However, upon our own review of the alleged errors stated in the defendant's petition and the exhibits attached in support of his petition, we affirm the trial court's determination. The exhibits in support of the defendant's petition do not, as a matter of law, establish any error of facts that would have changed the outcome of the defendant's trial. For example, the defendant notes that his exhibits attached to his petition reveal search warrants and the existence of various items. However, the defendant has not demonstrated that the search warrants or items listed therein have revealed any actual evidence that would have changed the outcome of his trial. The defendant also argues that the State withheld evidence of a recording made by a dashboard camera in Satkiewicz's patrol car. The defendant cites to a statute that requires certain law enforcement agencies to have continuously running dashboard cameras. However, the defendant has not provided any evidence to show that the McHenry County Sheriff's Office was subject to the requirements of that statute or any other evidence to contradict the trial testimony that no recording was recovered from the camera in Satkiewicz's patrol car.

¶ 32    The defendant's fifth contention is that the trial court erred in dismissing his petition *sua sponte*, without first providing him notice or an opportunity to be heard.  This argument is without merit.  Based upon the supreme court's ruling in *People v. Vincent*, 226 Ill. 2d 1, 11-16 (2007), the law is now settled in Illinois that the trial court may dismiss a petition for relief from judgment on its own motion without first providing the defendant with notice and an opportunity to be heard.  The cases cited by the defendant in support of this contention have been abrogated by our supreme court's decision in *Vincent*.  We are bound to follow our supreme court precedent.  See *People v. Artis*, 232 Ill. 2d 156, 164 (2009) ("The appellate court lacks authority to overrule decisions of [the supreme court], which are binding on all lower courts").

¶ 33    The defendant's next contention on appeal, which he also has listed as a fifth argument, is repetitive of a previous argument.  The defendant argues that his conviction was the result of fraud and misrepresentations by the police and the State.  The defendant contends that the police had no basis to go to his home on October 16, 2014, and that the police were unknown armed intruders that he shot in self-defense.  However, as stated above, the defendant's petition and his supporting exhibits do not establish a meritorious defense in this regard.

¶ 34    The defendant's final contention on appeal is that he should be held to a lower standard because he is arguing *pro se* and the legal resources in the Department of Corrections are inadequate.   The defendant reiterates that his conviction was the result of misconduct, misrepresentation, error of fact, suppression of evidence, and fraud by the police and the State. We acknowledge that the defendant is representing himself *pro se*, but "a *pro se* litigant must comply with the rules of procedure required of attorneys, and a court will not apply a more lenient standard to *pro se* litigants."  *People v. Fowler*, 222 Ill. App. 3d 157, 165 (1991).  Despite the defendant's repeated contentions to the contrary, the evidence in support of his petition does not

establish that his conviction was the result of fraud, misrepresentation, suppression of evidence, or error of fact. As such, the defendant's petition and affidavit provided in support of his section 2-1401 petition are insufficient as a matter of law to establish the existence of a meritorious defense. Accordingly, dismissal of the petition was proper. *Lee*, 2012 IL App (4th) 110403, ¶ 15.

¶ 35                                    III. CONCLUSION

¶ 36    For the reasons stated, the judgment of the circuit court of McHenry County is affirmed.

¶ 37    Affirmed.