2023 IL App (1st) 210451-U

No. 1-21-0451

Order filed February 21, 2023

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ADRIENNE CHRISTINE BARRON, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Human Rights |
| | ) | Commission. |
| | ) | |
| v. | ) | Charge No. 2019 CF 1662 |
| | ) | |
| | ) | |
| THE HUMAN RIGHTS COMMISSION, THE | ) | |
| DEPARTMENT OF HUMAN RIGHTS, and FORD | ) | |
| MOTOR COMPANY, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Hyman and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The Illinois Human Rights Commission's order sustaining the Illinois Department of Human Rights' dismissal of petitioner's charge of harassment and retaliation for lack of substantial evidence is affirmed.

¶ 2    On direct administrative review, petitioner Adrienne Christine Barron appeals *pro se* from

a final decision entered by the Illinois Human Rights Commission (Commission) sustaining the

Illinois Department of Human Rights' (Department) dismissal for lack of substantial evidence her charge of sexual harassment and retaliation against respondent Ford Motor Company (Ford) pursuant to the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2018)). We affirm.

¶ 3    On October 18, 2010, Ford hired petitioner as an operator. On October 11, 2017, petitioner filed her first "charge of discrimination" against Ford with the Department, alleging age and race discrimination (2017 charge).[1] On March 28, 2019, petitioner filed the instant "charge of discrimination" with the Department, asserting one count each of sexual harassment and retaliation.

¶ 4    The Department conducted an investigation of petitioner's charge of discrimination. The Department's investigator interviewed the petitioner and Heather Lang, Ford's labor relations representative. In an investigation report dated March 24, 2020, the investigator recommended the dismissal of both counts based on a lack of substantial evidence. The report recounted as uncontested facts that on or around February 14, 2019, petitioner was involved in an altercation with operator Jerome Smith, and on or around February 18, 2019, Ford suspended petitioner pending an investigation of that incident. In the report, the investigator detailed the evidence submitted by both parties during the investigation, which we summarize below.

¶ 5    As to the sexual harassment count, petitioner alleged that from December 11, 2017, to February 18, 2019, Ford subjected her to sexual harassment, creating a hostile and offensive work environment. Petitioner stated that, in late 2014, she started a new position and Smith introduced himself to her. One week later, Smith approached her and began talking negatively about another

---

[1]The details of the 2017 charge are not contained in the record.

female employee, calling her a " 'b***' ." Smith also told her about a male supervisor who said he wanted to have sex with another female employee. Petitioner had received an employee handbook upon hire detailing how to report sexual harassment but did not report Smith's comments.

¶ 6    In 2015, Smith referred to female employees as " 'b***es' " during a conversation with petitioner, and he attempted to scare her with a "rubber mouse" hidden in a doorway. Petitioner reported the "rubber mouse" incident, and Smith then stopped speaking to her.

¶ 7    In 2016, Smith "made advances" toward petitioner, asked if she and her husband had "make-up sex" after arguments, and told her it upset him when she talked to other men because he thought they " 'were going to get together.' " Petitioner alleged Smith would make similar comments "every two or three years" but would stop when told to do so. Petitioner did not report the comments to Ford.

¶ 8    On February 13, 2019, a male coworker handed out candy to female employees for Valentine's Day. When petitioner ate a lollipop, Smith told her, " 'Damn girl! The way you put that ring pop in your mouth is gonna make me c*** all over myself!' " Petitioner told Smith "not to talk to her that way." Petitioner did not report the comments because she did not want the incident to interfere with her upcoming transfer to a different position. On February 14, 2019, Smith became upset with petitioner for not doing his work for him and yelled, " 'F*** you b***.' " The investigator noted that, in addition to her own statement, petitioner provided a large volume of documents that included text messages to various employees informing them of the incident with Smith.

¶ 9 Ford provided the investigator with its anti-harassment directive, detailing a zero tolerance for sexual harassment, and complaint procedure policy, which explained the procedure an employee should follow in reporting any harassment. Lang stated petitioner reported sexual harassment in February 2019, after petitioner was apprised of a complaint filed against her by Smith. Lang indicated that plant labor relations investigated petitioner's complaint but was unable to substantiate her allegations. According to Lang, petitioner had made no previous allegations of sexual harassment.

¶ 10 Following the Department's investigation, the investigator concluded there was insufficient evidence to show Ford subjected petitioner to sexual harassment. The investigator noted that Smith's alleged comments "would likely constitute inappropriate and unacceptable conduct," but were "relatively isolated and not sufficiently severe and of a sufficient sexual nature as to create a sexually hostile work environment." The investigator emphasized it was uncontested that petitioner did not report sexual harassment until an altercation in which a complaint was filed against her. The investigator explained an employer could not be held liable for sexually offensive conduct of which it was not aware. The investigator found that Ford took "reasonable action" in response to petitioner's allegations, including investigating the allegations and coaching Smith regarding his obligations under Ford's anti-harassment policy. The investigator noted petitioner did not allege any sexually offensive conduct following her complaint. Therefore, the investigator recommended a finding of "lack of substantial evidence" regarding petitioner's sexual harassment claim.

¶ 11 As to the retaliation count, petitioner stated that on February 18, 2019, after her verbal altercation with Smith, Ford suspended her "pending an investigation." Petitioner argued she was

suspended in retaliation for filing the 2017 discrimination charge against Ford with the Department and the timing of her suspension "raise[d] an inference of retaliatory motivation." Petitioner never returned to work following her suspension and was ultimately discharged.

¶ 12    Ford provided the investigator with its "prohibition against retaliation policy," which prohibits retaliatory actions against an employee who has made a good-faith complaint of harassment. Ford denied being aware of the 2017 charge and argued it had a legitimate nondiscriminatory reason for suspending petitioner, which was based on her engaging in threatening conduct while working.

¶ 13    Specifically, Lang stated an altercation involving petitioner and Smith occurred on February 14, 2019, which Ford immediately investigated upon receiving a complaint from Smith. According to witnesses, petitioner cursed at her coworkers, grabbed her crotch, used "gang signs and racial slurs," and threatened to have her husband beat up Smith. A witness with first-hand knowledge of the incident stated Smith never responded to petitioner's "outbursts" and did not use the language alleged by petitioner. Witnesses also reported that petitioner had "propositioned" a female witness on two separate occasions, providing her a ring on one occasion and $100 on another occasion. After conducting interviews and because of the serious nature of the allegations, Ford suspended petitioner pending further investigation. Lang stated petitioner did not make her allegations against Smith until she was appraised of the complaint filed against her by him. Although Ford found petitioner's claims against Smith unfounded, Ford coached him to refrain from using offensive language and reminded him of his obligations under the anti-harassment policy.

¶ 14   In rebuttal, petitioner stated she did not feel Ford conducted a "fair and proper investigation" and denied telling Smith she would get her husband to beat him up. Petitioner stated she did tell Smith that "she told her husband how [Smith] talked to her."

¶ 15   The investigator found the evidence did not show Ford suspended petitioner in retaliation for engaging in a protected activity. The investigator noted that Lang asserted she had no knowledge of petitioner's prior discrimination charge, but, even if she had been aware, a time gap of 16 months between petitioner filing her prior charge on October 11, 2017, and her suspension on February 18, 2019, was too broad to provide any inference of retaliation. The investigator found no evidence that the suspension was "based on something other than [Ford's] good faith belief surrounding the circumstances." Therefore, the investigator recommended a finding of "lack of substantial evidence" that Ford suspended petitioner in retaliation for engaging in a protected activity.

¶ 16   On March 24, 2020, the Department dismissed petitioner's charge of discrimination for lack of substantial evidence.

¶ 17   On June 29, 2020, petitioner filed with the Commission a request for review of the Department's dismissal of her charge. She argued that the Department "overlooked relevant material evidences [*sic*]," and a "false report" had been filed against her. She also argued that Ford retaliated against her and a coworker for cooperating in an investigation of a "bad-faith" complaint. Petitioner reiterated her sexual harassment and retaliation claims and asserted additional factual allegations against Smith. She attached to her request for review several pages of text messages, incorporating her highlights and handwritten comments.

¶ 18    On August 3, 2020, the Department filed a response to petitioner's request for review, essentially reiterating the findings made in its report.

¶ 19    On January 12, 2021, the Commission issued its final order, sustaining the Department's dismissal of petitioner's charge for lack of substantial evidence. As to petitioner's sexual harassment count, the Commission found that Smith's alleged conduct was limited to isolated comments that, "though disgusting and inappropriate on their own," took place over the course of years and did not rise to the level of creating a hostile working environment. Further, even if Smith's comments had risen to that level, the Commission found that petitioner did not report the harassment until February 2019, and Ford responded reasonably by immediately investigating the allegations.

¶ 20    As to petitioner's retaliation count, the Commission inferred a causal connection existed between her suspension and the 2017 discrimination charge. The Commission explained that petitioner's 2017 charge was still pending when she was suspended, and the Department had conducted a fact-finding conference between petitioner and Ford one month before her suspension. As such, petitioner had established a *prima facie* case of retaliation. However, the Commission found Ford's explanation for suspending the petitioner based on its investigation of the altercation between her and Smith was a legitimate, nondiscriminatory reason for the suspension, and petitioner had not proven the suspension was "pretextual." The Commission also stated that to the extent petitioner attempted to raise new counts in her request, it lacked jurisdiction to consider them. Petitioner timely sought review of the Commission's final determination with this court.

¶ 21    As an initial matter, we note petitioner's *pro se* brief fails to comply with the requirements of Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020). For example, petitioner's brief fails to:

(1) demonstrate this court's jurisdiction; (2) reference the facts of the case without argument or comment; (3) include specific page citations to the record on appeal; and (4) set forth a clear legal argument supported by citation to the legal authorities. *Id.* Illinois Supreme Court rules have the force of law and must be followed. *In re Denzel W.*, 237 Ill. 2d 285, 294 (2010). This court will not apply a more lenient standard for *pro se* litigants. *People v. Fowler*, 222 Ill. App. 3d 157, 163 (1991); see *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 528 (2001) ("*Pro se* litigants are presumed to have full knowledge of applicable court rules and procedures.").

¶ 22    Where a party fails to comply with Rule 341, this court may, in our discretion, strike the brief and dismiss the appeal. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 77. Here, we see no impediment to resolving this appeal notwithstanding the various shortcomings of petitioner's brief, as the record is not voluminous and we have the benefit of a cogent appellee's brief. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001). Accordingly, we choose to address the merits of this appeal.

¶ 23    On appeal, petitioner challenges the Commission's factual determinations and dismissal of her sexual harassment and retaliation charges on the basis that her claims lacked substantial evidence.

¶ 24    Under the Act, the Department conducts an investigation and may dismiss a charge upon a determination that there is no "substantial evidence" supporting the charge.[2] 775 ILCS 5/7A-102(C), (D)(3) (West 2018). The Act defines "substantial evidence" as "evidence which a

---

[2]We note that several sections of the Act have been amended after petitioner filed her complaint, none of which are material to our analysis of this appeal. Illinois Public Act 101-221 (eff. Jan. 1, 2020); Illinois Public Act 102-558 (eff. Aug. 20, 2021). As such, we rely on the version of the Act in effect as of March 2019, when petitioner filed her charge.

reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance" of proof. 775 ILCS 5/7A-102(D)(2) (West 2018). A petitioner may seek review of the Department's dismissal of the charge by either commencing a civil action in the circuit court or filing a request for review with the Commission. 775 ILCS 5/7A-102(D)(3) (West 2018). Where the Commission sustains the dismissal, the petitioner, as done here, may seek direct appellate review of the Commission's final determination. 735 ILCS 5/3-113(a) (West 2018).

¶ 25     On direct appellate review, this court is "empowered to review any and all questions of law or fact presented by the record." *Anderson v. Human Rights Comm'n*, 314 Ill. App. 3d 35, 41 (2000). We review the Commission's decision to sustain the Department's dismissal of a charge for an abuse of discretion. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. Under the abuse of discretion standard, we will not reverse the Commission's decision unless it is arbitrary or capricious, meaning "it contravenes legislative intent, fails to consider a critical aspect of the matter, or offer[s] an explanation so implausible that it cannot be regarded as the result of an exercise of the agency's expertise." *Id.* ¶ 33.

¶ 26     Regarding petitioner's sexual harassment claim, the Act defines, in relevant part, "sexual harassment" as "any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature" where "such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment." 775 ILCS 5/2-101(E) (West 2018). Under the Act, an employer becomes "responsible for sexual harassment of the employer's employees by nonemployees or nonmanagerial and nonsupervisory employees only if the employer becomes aware of the conduct

and fails to take reasonable corrective measures." 775 ILCS 5/2-102(D) (West 2018). The parties do not dispute that Smith was a nonmanagerial and nonsupervisory employee.

¶ 27    Here, the Commission did not abuse its discretion in sustaining the dismissal of petitioner's sexual harassment charge. Although petitioner alleged that Smith made a series of inappropriate comments toward her from 2017 to 2019, the evidence established that petitioner did not report any misconduct to Ford until February 2019, which was after Smith had already filed a complaint against her regarding an altercation between them. Once petitioner did make a report, Ford immediately investigated the allegations. It found petitioner's allegations unfounded but, nonetheless, coached Smith regarding the company's anti-harassment policy. As an employer, Ford could not be subject to liability based on the alleged harassing conduct of Smith, a nonmanagerial and nonsupervisory employee, until it was notified of Smith's conduct and failed to take reasonable corrective measures. Under the facts of this case, petitioner did not present any evidence that Ford failed to take "reasonable corrective measures" after becoming aware of Smith's alleged conduct. *Id.*

¶ 28    Moreover, as the Commission found, Smith's alleged conduct amounted to a handful of isolated incidents that took place over several years, which did not support petitioner's claim that she was subjected to a hostile working environment due to the sexual harassment. See *Faragher v. City of Boca Raton*, 524 U.S. 775, 786-88 (1998) ("offhand comments" and "isolated incidents (unless extremely serious)" do not "amount to discriminatory changes in the 'terms and conditions of employment' " creating a hostile work environment); see also *Trayling v. Board of Fire & Police Commissioners of The Village of Bensenville*, 273 Ill. App. 3d 1, 11 (1995) (the prohibition of sexual harassment found in the Act parallels federal law and so examination of federal law is

appropriate). As such, the Commission properly sustained the Department's finding that there was a lack of substantial evidence supporting petitioner's charge of sexual harassment against Ford.

¶ 29     We next turn to petitioner's retaliation charge. Under the Act, an employer may not "[r]etaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination [or] *** sexual harassment in employment." 775 ILCS 5/6-101(A) (West 2018). To establish a *prima facie* case of retaliation under the Act, the petitioner must show "(1) she was engaged in a protected activity; (2) her employer committed a material adverse act against her; and (3) a causal nexus existed between the protected activity and the adverse act." *Spencer v. Illinois Human Rights Comm'n*, 2021 IL App (1st) 170026, ¶ 40. Once a *prima facie* case is established, "a rebuttable presumption arises that the employer unlawfully discriminated against" the petitioner, and the employer must rebut the presumption by articulating "a legitimate, nondiscriminatory reason for its decision." *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 179 (1989).

¶ 30     If the employer carries its burden, the presumption of unlawful discrimination falls and the petitioner must prove "by a preponderance of the evidence that the employer's articulated reason was not its true reason, but was instead a pretext for unlawful discrimination." *Id.* A petitioner can establish pretext by showing: "(1) the articulated reason had no basis in fact; (2) the reason did not actually motivate the decision; or (3) the reason was insufficient to motivate the decision." *Thai v. Triumvera 600 Naples Court Condominium Ass'n*, 2020 IL App (1st) 192408, ¶ 46. The issue of whether the employer's stated reason is a pretext is a question of fact. *Id.*

¶ 31     In this case, the Commission's decision sustaining the dismissal of petitioner's retaliation charge was not an abuse of discretion. The Commission concluded that petitioner had established

a *prima facie* case of retaliation because her 2017 charge was still pending when she was suspended on February 18, 2019. However, Ford stated that it suspended petitioner pending the investigation of an altercation between petitioner and Smith that occurred on February 14, 2019. The investigation of that altercation produced witness accounts that petitioner purportedly cursed at her coworkers, grabbed her crotch, used "gang signs and racial slurs," and threatened to have her husband beat up Smith. Here, the Commission properly sustained the dismissal of petitioner's retaliation charge based on her failure to demonstrate by a preponderance of the evidence that Ford's legitimate, nondiscriminatory reason for suspending her based on her own misconduct in the workplace was pretextual. *Zaderaka*, 131 Ill. 2d at 179.

¶ 32    We note that petitioner raises several new factual allegations not contained in the record, apparently disputing what happened during the February 14, 2019, altercation with Smith, which led to Smith reporting her conduct to Ford. However, under the Administrative Review Law, petitioner cannot ask this court to consider new or additional evidence that was not raised before the Commission. 735 ILCS 5/3-110 (West 2020) ("No new or additional evidence in support of or in opposition to any finding, order, determination, or decision of the administrative agency shall be heard by the court."). Therefore, we cannot consider any new allegations regarding Smith's conduct that petitioner failed to previously raise.

¶ 33    For the foregoing reasons, we affirm the decision of the Commission sustaining the Department's dismissal of petitioner's charge of discrimination.

¶ 34    Affirmed.